# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-03-00060-CV

---

**Alex Sheshunoff Management Services, L.P./Kenneth Johnson and Strunk & Associates, L.P., Appellants**

**v.**

**Kenneth Johnson and Strunk & Associates, L.P./Alex Sheshunoff Management Services, L.P., Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. GN201863, HONORABLE PAUL DAVIS, JUDGE PRESIDING**

---

## O P I N I O N

In this summary judgment case, we must determine whether a covenant not to compete agreement entered into a few months after an employee is promoted to a new position is enforceable as a matter of law. Alex Sheshunoff Management Services, L.P. ("ASM") appeals from a summary judgment granted in favor of its former employee, Kenneth Johnson, and Johnson's new employer, Strunk & Associates, L.P. ("Strunk"). ASM brought suit against Johnson to enforce the covenant not to compete, which the district court found on summary judgment to be unenforceable.

Strunk brings a cross-appeal from a summary judgment granted in favor of ASM, denying Strunk's request for attorney's fees. For the reasons that follow, we affirm the judgment of the district court.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1993, Johnson became an employee of ASM, which provides consulting services to financial institutions. He worked in various capacities over the next few years. At some point in 1996, the director of human resources asked him to sign an employment agreement containing a covenant not to compete, which he declined to do. On September 1, 1997, Johnson was promoted to Director of Affiliation, overseeing a program to develop and maintain relationships with financial institutions. In January 1998, he was again asked to sign an employment agreement containing a covenant not to compete. This time, after Johnson was told that he had no choice as a member of senior management, he signed the agreement, to be effective January 1, 1998. The agreement contained a covenant not to compete, under which, in return for ASM's promise to provide training and access to confidential information, Johnson agreed while employed for ASM and for one year thereafter not to "solicit or aid any other party in soliciting any affiliation member or previously identified prospective client or affiliation member."

In January 2002, ASM began to market a new overdraft protection product to banks. Contemporaneously, Johnson received a job offer in a telephone call from William Strunk of Strunk & Associates, which also sells overdraft protection products to banks. Johnson and Strunk negotiated the terms of the job over several weeks, during which Johnson had access to confidential

2

information about ASM's new business.[1]  On March 6, Johnson gave notice to ASM that he was leaving the company.  On March 23, he told Gabrielle Sheshunoff, the CEO of ASM, that he was going to work for Strunk.  Johnson was then sent home with pay.  He resigned from ASM on April 9 and began working for Strunk on April 22.

In late March through May, ASM and Strunk exchanged correspondence about Johnson's employment agreement with ASM.  ASM sent a letter and copy of the employment agreement to Strunk on March 27, asking Johnson to honor its terms.  On April 9, Johnson's attorney replied by letter that "Mr. Johnson has engaged and will engage in no misconduct that would violate any duties to ASM."  Some time in May, Johnson and William Strunk, the CEO of Strunk, had lunch with the president of a bank that was an ASM affiliation member.  ASM's attorney then asked Johnson's attorney if Johnson intended to honor the terms of the employment agreement.

On June 4, two days before Johnson was to make a presentation for Strunk to the California Bankers Association, Johnson's attorney informed ASM's attorney that Johnson "would be contending" that the employment agreement was unenforceable.  On June 5, ASM filed suit, seeking a temporary restraining order (TRO) to preclude Johnson from making the presentation, and temporary and permanent injunctions to enforce the agreement.  The district court signed the TRO on the same day.  Strunk intervened on June 6, seeking a declaratory judgment that the covenant not to compete was invalid.  After a hearing on ASM's application for temporary injunction, the district

---

[1]  ASM, however, does not allege facts concerning or assert a cause of action for misappropriation of trade secrets.

court issued the temporary injunction on June 17. The district court later set ASM's application for permanent injunction for trial on January 13, 2003.

Meanwhile, Strunk and Johnson filed motions for summary judgment on the ground that the covenant not to compete is unenforceable as a matter of law. The district court granted the motions, ordering that ASM take nothing by its suit and dissolving the temporary injunction. Strunk amended its plea in intervention, seeking to recover its attorney's fees and Johnson's attorney's fees by assignment. ASM then filed a motion for summary judgment on the ground that Strunk was not entitled to any attorney's fees. ASM also sought to exclude evidence of attorney's fees because Strunk did not timely designate its attorney's fees experts. The district court held a hearing on ASM's motion on January 8, 2003, orally granting summary judgment in favor of ASM. The next day, Strunk filed a motion for leave to file a further affidavit concerning Johnson's attorney's fees. On January 10, the district court, in its final judgment, ordered that Strunk and Johnson take nothing on their request for attorney's fees. On January 30, the district court denied Strunk's motion for leave to file a further affidavit.

ASM appeals on the ground that the district court erred in granting summary judgment in favor of Strunk and Johnson concerning the covenant not to compete. Strunk and Johnson bring a cross-appeal on the grounds that the district court erred in granting summary judgment in favor of ASM concerning Strunk's request for attorney's fees and, if the amount of attorney's fees is necessary to create a fact issue, the district court further erred in denying Strunk's motion to supplement the summary judgment record.

4

## ANALYSIS

### *Standard of Review*

Because Strunk filed a traditional motion for summary judgment and Johnson and ASM filed motions on both traditional and no-evidence grounds, both standards of review are relevant.

### *Traditional Motion for Summary Judgment*

The standards for review of a traditional summary judgment are well established: the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *See* Tex. R. Civ. P. 166a(c); *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645-46 (Tex. 2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

### *No-Evidence Motion for Summary Judgment*

A party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial. *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. Tex. R. Civ. P. 166a(i). To raise a genuine issue of material fact, the nonmovant must set forth more than a scintilla of probative

5

evidence as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See id.*; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of fact, and the legal effect is that there is no evidence. *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). If the nonmovant fails to present evidence raising a genuine issue of material fact as to the challenged element, the trial court must grant the motion. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal sufficiency standard of review. *Jackson*, 979 S.W.2d at 70.

The district court did not state the basis for its decision in either of its orders granting summary judgment. When we review a summary judgment in which the trial court did not state the basis for its decision in its order, the appealing party must show that it is error to base summary judgment on any ground asserted in the motion. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). We must affirm the summary judgment if any one of the movant's theories has merit. *Id.* Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

6

*ASM's Appeal*

In its sole issue, ASM contends that the district court erred in granting summary judgment in favor of Strunk and Johnson.[2]  By granting summary judgment, the district court declared that the covenant not to compete is unenforceable as a matter of law.

Construing Texas law in the arena of covenants not to compete, we are mindful that we do not write on a clean slate.  A covenant not to compete is a disfavored contract in restraint of trade and is unenforceable unless it meets certain statutory requirements.  *See* Tex. Bus. & Com. Code Ann. §§ 15.05, .50 (West 2002); *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 599 (Tex. App.—Amarillo 1995, no writ) (citing *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 832 (Tex. 1991)).  The enforceability of a covenant not to compete is a question of law.  *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644 (Tex. 1994).

The parties agree that the primary purpose of the employment agreement was to obligate Johnson to render personal services.  When a covenant not to compete is part of such a contract, the employer has the burden to prove that the covenant not to compete meets the statutory criteria.  *See* Tex. Bus. & Com. Code Ann. § 15.51(b) (West 2002).

The version of section 15.50 of the business and commerce code in effect at the time the parties entered into the agreement provided:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise
> enforceable agreement at the time the agreement is made to the extent that it contains

---

[2] Because Strunk and Johnson raised similar issues in their motions for summary judgment, for convenience we will refer to these parties collectively as Strunk for the purposes of ASM's appeal.

7

limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Act of May 29, 1993, 73d Leg., R.S., ch. 965, § 1, 1993 Tex. Gen. Laws 4201, 4201 (amended 1999 & 2001) (current version at Tex. Bus. & Com. Code Ann. § 15.50(a) (West 2002)). The "otherwise enforceable agreement" must, like any contract, be supported by consideration. "Consideration is a present exchange bargained for in return for a promise. It consists of either a benefit to the promisor or a detriment to the promisee." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991) (internal citations omitted).

We must first determine then whether the parties entered into an otherwise enforceable agreement by exchanging binding promises. The parties agree that they entered into an at-will employment agreement. Standing alone, an at-will employment relationship does not constitute an otherwise enforceable agreement because it is "illusory," meaning not binding on either the employee or the employer. *See Light*, 883 S.W.2d at 645; *Martin v. Credit Prot. Ass'n*, 793 S.W.2d 667, 669 (Tex. 1990). The agreement may be enforceable, though, if the contract contains independent consideration that is not dependent upon the illusory promise of continued employment. *Light*, 883 S.W.2d at 645.[3]

---

[3] Before statutory criteria for the enforceability of covenants not to compete were set forth in 1989, at least one court had allowed continued employment to be sufficient consideration to support an employment agreement. *See Currie v. International Telecharge, Inc.*, 722 S.W.2d 471, 474-75 (Tex. App.—Dallas 1986, no writ) (in appeal of temporary injunction proceeding, court held that trial court did not abuse its discretion in finding agreement supported by consideration of continued employment).

8

ASM and Johnson entered into the employment agreement in January 1998, four months after Johnson was promoted to the Director of Affiliation position. The agreement provided, in pertinent part:

5.   PROTECTION OF EMPLOYER'S CONFIDENTIAL INFORMATION

   (a)   To assist Employee in the performance of his/her duties, Employer agrees to provide to Employee, special training regarding Employer's business methods and access to certain confidential and proprietary information . . . .

   * * *

   (c)   Employee agrees to keep the Confidential Information, and all documentation, access and information thereto, strictly confidential.

   * * *

   (d)   The terms and conditions of this Paragraph 5 shall survive the termination of Employee's employment with Employer.

The covenant not to compete contained within the employment agreement provided, in pertinent part:

   (a)   In consideration of the training and access to Confidential Information provided by Employer, and so as to enforce Employee's agreement regarding such Confidential Information contained in paragraph 5 above, Employee agrees that while employed by Employer, and for a period of one (1) year following termination of Employee's employment for any reason, Employee will not

   * * *

      (ii) solicit or aid any other party in soliciting any affiliation member or previously identified prospective client or affiliation member . . . .

In the agreement, Johnson made a number of non-illusory promises to ASM, which included:

1. To give at least two weeks' notice before terminating his employment;

2. To return all confidential information on termination of employment;

3. For one year after his termination, not to solicit or aid anyone else in soliciting any ASM affiliation member or prospective ASM client or affiliation member; and

4. Upon termination, to keep the confidentiality of ASM confidential information, including proposals, employee lists, customer lists, marketing strategies, and financial information.

ASM also made the non-illusory promise to give Johnson at least two weeks' notice if it terminated the employment agreement for any reason other than Johnson's misconduct.

At the heart of the parties' dispute is whether ASM's promise to provide special training and access to confidential information was illusory. Under section 15.50, the relevant inquiry is whether ASM's promise was binding at the time that the agreement was made. *See* Tex. Bus. & Com. Code § 15.50(a); *CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 263 (Tex. App.—Houston [1st Dist.] 1996, no writ); *see also Light*, 883 S.W.2d at 644-45. ASM urges that because the confidential databases to which Johnson had access changed daily, the information that Johnson received after signing the agreement was different than before he signed the agreement, thus constituting valid consideration. ASM further argues that its promise to give Johnson at least two weeks' notice before termination would give Johnson the right to receive confidential information

during the notice period. Strunk counters that Johnson already had access to confidential information by virtue of his promotion to Director of Affiliation—he received nothing new at the time of signing the agreement and the type or quality of the confidential information that he received subsequent to entering into the agreement did not change. Furthermore, Strunk argues, ASM was not bound by its promise to provide confidential information because it could have fired Johnson at any time after the parties signed the agreement and because Johnson only had a right to confidential information to "assist in . . . the performance of his . . . duties," which was entirely in ASM's discretion.

Gabrielle Sheshunoff, the CEO of ASM, testified that when Johnson became Director of Affiliation in September 1997, he had access to certain confidential information and training that he did not have access to before his promotion:

> [ATTORNEY]: If I understand your testimony correctly, these classes of confidential information and specialized training that Ken Johnson was given by ASM as a result of his position as director of Affiliation, he began receiving those classes of information and training in September of 1997?
>
> MS. SHESHUNOFF: When he became director of Affiliation.
>
> [ATTORNEY]: Is that a yes answer to my question?
>
> MS. SHESHUNOFF: If September is the actual date that he became director of Affiliation, that is correct.

When asked about what Johnson received after signing the agreement, she testified about the overdraft protection product, being developed in late 2001 and early 2002, and also described training that Johnson received:

11

[ATTORNEY]: Can you identify for me any classes of information or specialized training that would have been given to Ken Johnson after January of 1998–which classes he had not already been provided prior to that?

MS. SHESHUNOFF: I think I answered that before when I said he had gone off to Disney and he'd gone to various trade shows. Prior to that he might not have been sent to.

Under section 15.50, the time relevant to this determination "is the *moment the agreement is made*; the issue is whether, 'at the time the agreement is made,' there exists other mutually binding promises to which the covenant not to compete is ancillary or part and parcel." *Myers*, 927 S.W.2d at 263; *see Light*, 883 S.W.2d at 644-45. The fact that ASM gave new confidential information and training to Johnson some time after entering into the agreement will not suffice; we must evaluate the consideration given at the time the agreement was made. *See Olander v. Compass Bank*, 172 F. Supp. 2d 846, 854 (S.D. Tex. 2001). When we evaluate the agreement at the time it was made, ASM's provision of confidential information and training to Johnson before signing the agreement will not support its promises in the agreement. *Roark*, 813 S.W.2d at 496 ("Consideration is a *present* exchange bargained for in return for a promise.") (emphasis added); *see also* Jordan Leibman & Richard Nathan, *The Enforceability of Post-employment Noncompetition Agreements Formed After At-will Employment Has Commenced: the "Afterthought" Agreement*, 60 S. Cal. L. Rev. 1465, 1528-29 (1987) ("If anything in the classical law of contracts is clear, it is that past consideration is not good consideration. Any exchange has to be contemporaneous by definition, because the promise and the consideration for that promise must serve as reciprocal conventional inducements.").

12

ASM relies heavily on footnote 14 in *Light* for support of its proposition that its promise to give Johnson access to confidential information and training in the future was sufficient consideration to constitute an otherwise enforceable agreement. Footnote 14 states in pertinent part: "if an employer *gives* an employee confidential and proprietary information or trade secrets in exchange for the employee's promise not to disclose them, and the parties enter into a covenant not to compete, the covenant is ancillary to an otherwise enforceable agreement." *Light*, 883 S.W.2d at 647 n.14 (emphasis added). Under *Light*, a *promise* to give confidential information is not sufficient. The employer must actually give the confidential information in return for the employee's promise not to disclose it.

ASM cites two other cases for further support that a promise to provide information is sufficient. The facts of these cases are distinguishable from the facts of the instant case. In *Curtis v. Ziff Energy Group, Ltd.*, the employee entered into the employment contract upon entering employment, not a few months after accepting a promotion. 12 S.W.3d 114, 116 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The court found that the employer's promise to provide confidential information in return for the employee's promise of nondisclosure was non-illusory and sufficient consideration, and nothing in the opinion shows that Curtis challenged this point. *Id.* at 118. He instead challenged the geographic restrictions of the covenant not to compete. *Id.* at 119. Likewise, the court in *Ireland v. Franklin* upheld a covenant not to compete premised on the employer sharing "listed trade secrets" in the contract with the employee at the time she entered into the agreement. 950 S.W.2d 155, 158 (Tex. App.—San Antonio 1997, no writ).

13

Here, the record contains no evidence of new confidential information or training that Johnson received *at the time* he entered into the employment agreement, months after accepting the new position. Nor does it show any change in the type or quality of information and training that Johnson received immediately after signing the agreement. Were we to hold that any daily change in the confidential customer database was sufficient new consideration to support the employment agreement, we would do nothing for future litigants to illuminate the already murky question of what constitutes sufficient consideration in an employment contract. ASM's promise to give Johnson access to training and confidential information in the future was illusory because ASM could have fired Johnson immediately after he signed the agreement and escaped its obligation to perform. ASM's argument—that Johnson, if terminated, could enforce his right to confidential information during the requisite notice period before termination—is without merit. It is difficult to believe that ASM would have given Johnson access to new confidential information in the interim, in light of the fact that Johnson's access to confidential information was conditioned on assisting him in the performance of his duties and Johnson was sent home with pay after ASM learned that he was leaving the company to work for Strunk. There is simply no support in the record for this bald assertion.

Thus, ASM's acceptance of Johnson's promise to maintain confidentiality by later providing confidential information created a unilateral contract but not an otherwise enforceable agreement at the time the agreement was made. *See Light*, 883 S.W.2d at 645 n.6; *Anderson Chem. Co. v. Green*, 66 S.W.3d 434, 438 (Tex. App.—Amarillo 2001, no pet.). Given that Johnson already had access to confidential information and training before entering into the agreement, and that there

14

is no evidence that ASM provided anything new at the time of signing, the only non-illusory promise that causes this to be an otherwise enforceable agreement at the time the agreement was made is ASM's promise to give Johnson notice before termination for anything other than misconduct.

Having determined that an otherwise enforceable agreement exists, we must now determine whether the covenant not to compete is "ancillary to or a part of" that agreement at the time the agreement is made. Tex. Bus. & Com. Code Ann. § 15.50(a); *Light*, 883 S.W.2d at 646-47. To meet this requirement:

    (1)   the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and

    (2)   the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.

*Light*, 883 S.W.2d at 647. ASM's non-illusory promise to give at least two weeks' notice before terminating Johnson does not give rise to its interest in restraining Johnson from competing. *See id.* at 647 n.15 (holding that promise to give notice does not give rise to employer's interest in restraining employee from competing); *Strickland v. Medtronic, Inc.*, 97 S.W.3d 835, 839 (Tex. App.—Dallas 2003, pet. filed) (same); *Donahue v. Bowles, Troy, Donahue, Johnson, Inc.*, 949 S.W.2d 746, 752 (Tex. App.—Dallas 1997, writ denied) (same). We thus conclude that the covenant not to compete is not ancillary to or part of an otherwise enforceable agreement. Because ASM failed to carry its burden to prove that the covenant not to compete meets the statutory criteria, *see* Tex. Bus. & Com. Code Ann. § 15.51(b), we overrule ASM's issue and uphold the district court's grant of summary judgment in favor of Strunk and Johnson.

15

*Strunk's Cross-Appeal*

Strunk brings a cross-appeal by two issues, primarily contending that the district court erred in granting summary judgment in favor of ASM concerning Strunk's request for attorney's fees for both itself and Johnson, by assignment. Strunk further contends in a secondary issue that if the amount of Johnson's attorney's fees is needed to create a fact issue, the district court further erred in denying Strunk's motion to supplement the summary judgment record with evidence of attorney's fees.

Strunk, as intervenor in ASM's suit against Johnson, requested its own fees in a declaratory judgment action, by which a court may award attorney's fees as are equitable and just. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). ASM argues that Strunk is not entitled to attorney's fees because it improperly seeks no relief independent of ASM's cause of action. We agree. ASM contended in its petition that Johnson had violated the covenant not to compete and sought temporary and permanent injunctions enforcing its terms. Strunk sought declaratory relief that Johnson had not violated the covenant not to compete and that the covenant not to compete was invalid. "The Declaratory Judgments Act is 'not available to settle disputes already pending before a court.'" *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (quoting *Heritage Life Ins. Co. v. Heritage Group Holding Corp.*, 751 S.W.2d 229, 235 (Tex. App.—Dallas 1988, writ denied)). Because the issues Strunk sought to have declared were pending before the trial court in ASM's causes of action, Strunk's request for attorney's fees by way of a declaratory judgment action was inappropriate.

16

Strunk also sought Johnson's attorney's fees, under section 15.51 of the business and commerce code. Tex. Bus. & Com. Code Ann. § 15.51(c) (West 2002). Under this provision, a court may award costs to an employee who has entered into a covenant not to compete if the following conditions are satisfied:

> (a) the employer knew that the limitations in the agreement were unreasonable at the time of execution;
>
> (b) the limitations were unreasonable; and
>
> (c) the employer sought to enforce the agreement to a greater extent than necessary.

*See id.* Strunk argues that because ASM knew that Johnson did not sign the employment agreement until after becoming the Director of Affiliation, "it is reasonable to infer that ASM has always known that its after-the-fact non-compete was unreasonable in all respects." But Strunk directs us to no evidence of knowledge on ASM's part that any limitations were unreasonable at the time that the parties entered into the agreement, and we find none. Because Strunk presented no evidence of an element to recover attorney's fees on behalf of Johnson under section 15.51 of the business and commerce code and because Strunk's request for attorney's fees for itself by way of a declaratory judgment action was inappropriate, we overrule Strunk's first issue and affirm the district court's grant of summary judgment in favor of ASM.

In its second issue, Strunk contends that the district court abused its discretion in denying Strunk's motion for leave to file a further affidavit concerning Johnson's attorney's fees. The district court's docket sheet shows that the trial judge granted summary judgment in favor of ASM at the January 8, 2003 hearing on the motion. On January 9, Strunk filed its motion for leave

17

to supplement the summary judgment record. On January 10, the district court, in its final judgment, ordered that Strunk and Johnson take nothing on their request for attorney's fees. Then, on January 30, the district court denied Strunk's motion for leave to file a further affidavit, stating in a letter to the parties that the "ruling on the motion for summary judgment was announced by the Court at the conclusion of the hearing that occurred on January 8, 2003."

Rule 166a(c) states that, except on leave of court, the nonmovant may file affidavits not later than seven days before the day of the summary judgment hearing. Tex. R. Civ. P. 166a(c). It is entirely within the trial court's discretion to allow late filing of opposing proof. *Bell v. Moores*, 832 S.W.2d 749, 755 (Tex. App.—Houston [14th Dist.] 1992, writ denied). It is not an abuse of discretion for the trial court to refuse to consider untimely affidavits opposing a motion for summary judgment. *See Karen Corp. v. Burlington N. & Santa Fe Ry. Co.*, 107 S.W.3d 118, 124 (Tex. App.—Fort Worth 2003, pet. denied); *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex. App.—Dallas 1995, writ denied); *Bell*, 832 S.W.2d at 755. We hold that Strunk has failed to establish that the district court abused its discretion in denying Strunk's late request to supplement the summary judgment record. We overrule Strunk's second issue.

## CONCLUSION

In ASM's employment agreement with Johnson, entered into four months after Johnson was promoted to a new position, ASM made a promise to give Johnson special training and access to confidential information to assist him in the performance of his duties. Because Johnson already had access to special training and confidential information by virtue of his promotion and because ASM could escape its obligation to perform by firing Johnson immediately after he entered

18

into the agreement, ASM's promise was illusory. ASM's only non-illusory promise, independent of continued employment, was to give Johnson notice of termination. Because this promise does not give rise to ASM's interest in restraining Johnson from competing, *Light*, 883 S.W.2d at 647 n.15, the covenant not to compete in the employment agreement is not "ancillary to or part of an otherwise enforceable agreement" and is therefore unenforceable, Tex. Bus. & Com. Code Ann. § 15.50(a). ASM therefore failed to carry its burden to prove that the covenant not to compete in its personal services employment agreement with Johnson met the statutory criteria of section 15.50(a) of the business and commerce code. Accordingly, we overrule ASM's issue and affirm the district court's grant of summary judgment in favor of Strunk that the covenant not to compete is unenforceable as a matter of law.

In Strunk's cross-appeal, because Strunk presented no evidence of an element to recover attorney's fees on behalf of Johnson under section 15.51 of the business and commerce code and because Strunk's request for attorney's fees for itself by way of a declaratory judgment action was inappropriate, we affirm the grant of summary judgment in favor of ASM on Strunk's request for attorney's fees on behalf of itself and Johnson.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: October 2, 2003

19