In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-538 CV


____________________



DAN WRIGHT and RIDDELL, INC., Appellants



V.



SPORT SUPPLY GROUP, INC., Appellee






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 03-09-06818-CV






O P I N I O N


 Appellants, Dan Wright and Riddell, Inc., ask this court to dissolve a temporary
injunction entered against them at the request of Sport Supply Group, Inc. ("SSG"). Wright,
a former SSG sports equipment salesman, now sells sports equipment for Riddell. The trial
court found Wright's employment with Riddell violates a confidentiality and noncompetition
agreement between Wright and SSG. The trial court's order restrains Wright and Riddell,
in conjunction with Wright, from performing "sales related services or activities" for
business in competition with SSG for "institutional customers" and from doing business with,
soliciting or contacting any SSG "customer or ex-customer" in twenty-nine Texas counties. 
Wright and Riddell bring six issues. Concluding the trial court abused its discretion in
granting the temporary injunction, we reverse the trial court's order.

 Wright began his employment with SSG as an outside salesperson in 1995. Wright
sold SSG's sporting goods to various youth leagues and similar institutional customers in
Harris County, as well as other counties in Southeast Texas. In November, 2001, Wright
signed the Non-Competition and Confidentiality Agreement ("Agreement") that SSG seeks
to enforce through the underlying lawsuit. In July 2003, Wright resigned from SSG and
began working for Riddell soon after. 

 Wright now works for Riddell in essentially the same geographical territory as he did
for SSG. Wright's customer base for Riddell includes entities such as youth leagues, high
schools, park and recreation associations, YMCAs, boys' and girls' clubs and church leagues
- the same categories of customers he called on for SSG. While with Riddell, Wright has
sold products to the Salvation Army, Magnolia Youth Football, Spring Branch Memorial
Sports Association, Willis Youth Athletic Association and The Houston Gunners - all
customers Wright serviced on behalf of SSG. 

 Wright's office telephone line is a second telephone number based in his home. The
telephone number he uses now for Riddell is the same number he used while working for
SSG. The number was on his SSG business cards and now is on his Riddell business cards. 
Since Wright left SSG, a representative of at least one of his SSG customers, the Spring
Branch Memorial Sports Association, has called Wright on his business telephone. After
informing the representative that he now worked for Riddell, Wright sold sporting goods to
the representative on behalf of Riddell. 

 We review a trial court's grant or denial of injunctive relief by an abuse of discretion
standard. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). We should reverse
an order granting injunctive relief only if the trial court abused its discretion and we must not
substitute our judgment for that of the trial court unless the trial court's action was so
arbitrary that it exceeded the bounds of reasonable discretion. Id.

 While a temporary injunction's purpose is to preserve the status quo of the litigation's
subject matter pending a trial on the merits, it also is an extraordinary remedy that does not
issue as a matter of right. Id. To obtain a temporary injunction, an applicant must plead and
prove three specific elements (1) a cause of action against the defendant; (2) a probable right
to the relief sought; and (3) a probable, imminent, and irreparable injury before trial. Id. 
"An injury is irreparable if the injured party cannot be adequately compensated in damages
or if the damages cannot be measured by any certain pecuniary standard." Id.

 We view the evidence in the light most favorable to the trial court's order, indulging
every reasonable inference in its favor, and determine whether the order was so arbitrary as
to exceed the bounds of reasonable discretion. NMTC Corp. v. Conarroe, 99 S.W.3d 865,
868 (Tex. App.--Beaumont 2003, no pet.). The trial court does not abuse its discretion when
basing its decision on conflicting evidence, nor does it abuse its discretion so long as some
evidence of substantive and probative character exists to support its decision. See Davis v.
Huey, 571 S.W.2d 859, 862 (Tex. 1978); see Brosseau v. Ranzau, 81 S.W.3d 381, 400 (Tex.
App.--Beaumont 2002, pet. denied).

 In issues one and two, (1) appellants attack SSG's proof of the third Butnaru element: 
probable, imminent, and irreparable injury before trial. Maintaining SSG offered no
evidence of probable injury, appellants complain in issue one that SSG failed to present any
evidence it has no adequate remedy at law. Issue two contends SSG failed to present any
evidence it would suffer irreparable injury. The record clearly shows probable and imminent
injury. Wright admitted he was selling Riddell sporting goods to former SSG customers in
his old SSG territory. Thus, "[t]he harm was more than imminent; it was actual and
ongoing." Conarroe, 99 S.W.3d at 869. 

 Appellants argue SSG neither offered evidence that monetary damages would be an
insufficient remedy, nor that either Wright or Riddell is unable to satisfy a judgment for
damages sustained by SSG prior to completion of a full trial on the merits. 

 SSG maintains evidence of inadequate remedy of law is found in both the testimony
of Wright regarding his sales to SSG's customers, as well as that of Robert Coffman, SSG's
director of business development. Robert Coffman testified as follows: 

 Q. Shifting gears in the interest of time, Mr. Coffman, what's the impact on the
company of Mr. Wright's departure from the Houston territory and his
employment for Riddell?


 A. It's really hard to quantify that because the relationship that Mr. Wright has in
the territory I couldn't really give you a specific number that could actually tell
you how much it would impact us.


 Q. How, why not?


 A. Basically, it's all relationship driven. If you have your customer lists, I don't
know if they are going to buy next year or ten years from now. I just couldn't
tell you. 


 Based on this testimony, SSG maintains the trial court could have determined that
SSG's damages were difficult to calculate. We agree. See Universal Health Serv., Inc. v.
Thompson, 24 S.W.3d 570, 578 (Tex. App.--Austin 2000, no pet.); see also Miller Paper Co.
v. Roberts Paper Co., 901 S.W.2d 593, 597 (Tex. App.--Amarillo 1995, no pet.). 

 In addition, the Agreement between Wright and SSG provides that remedies at law
for any breach or attempted breach of the Agreement are inadequate and each of the parties
is entitled to "injunctive and other equitable relief." The parties also agreed not to use as a
defense that either party has an adequate remedy at law. While we are unaware of any Texas
case holding that such agreements alone establish, for injunction purposes, that remedies at
law will be inadequate, the Texas Supreme Court long has recognized "a strong public policy
in favor of preserving the freedom of contract." Lawrence v. CDB Serv., Inc., 44 S.W.3d
544, 553 (Tex. 2001). Absent a statute or fundamental public policy precluding waiver, one
generally may contractually waive even constitutional or statutory rights, whether present or
future. See Williams v. Williams, 569 S.W.2d 867, 869-70 (Tex. 1978)(surviving spouse
could contractually waive statutory and constitutional homestead rights); Dillee v. Sisters of
Charity of Incarnate Word Health Care Sys., Houston, Tex., 912 S.W.2d 307, 308-09, 311
(Tex. App.--Houston [14th Dist.] 1995, no writ)(employee could contractually waive contract
and constitutional right to due process and hearing upon termination of employment if done
so voluntarily, intelligently, and knowingly). Thus, some substantive and probative evidence
exists to support the trial court's order. When we view the evidence "in the light most
favorable to the order, and indulge all reasonable inferences in favor of the decision," we
cannot say the order was so arbitrary as to exceed the bounds of reasonable discretion. 
Conarroe, 99 S.W.3d at 868. Therefore, we find the trial court did not abuse its discretion
in determining SSG has no adequate remedy at law and SSG's damages are not presently
ascertainable or readily subject to calculation. Issue one is overruled.

 Issues one (no evidence of inadequate remedy at law) and two (no evidence of
irreparable injury) are intertwined under Texas case law. One way to establish irreparable
injury is to show the damages "cannot be measured by any certain pecuniary standard," see
Butnaru, 84 S.W.3d at 204, or in other words, to establish there is no "adequate remedy at
law for damages." Cardinal Health Staffing Network, Inc. v. Bowen 106 S.W.3d 230, 235
(Tex. App.--Houston [1st Dist.] 2003, no pet.). As the trial court, without abuse of
discretion, determined SSG's damages were not presently ascertainable or readily subject to
calculation, it follows that SSG's injury likewise is irreparable. See Butnaru, 84 S.W.3d at
204. 

 Moreover, SSG maintains that that an employee's breach of a noncompetition
covenant creates a rebuttable presumption that the applicant will suffer irreparable injury. 
SSG relies on Beasley v. Hub City Tex., L.P., 2003 WL 22254692 at *7-8 (Tex. App.--Houston [1st Dist.] Sept. 29, 2003, no pet.) (not designated for publication); Unitel Corp. v.
Decker, 731 S.W.2d 636, 641 (Tex. App.--Houston [14th Dist.] 1987, no writ) (proof of
continued breach of noncompete agreement by highly trained employee constitutes prima
facie proof of probable injury.); and Hartwell's Office World, Inc. v. Systex Corp., 598
S.W.2d 636, 639 (Tex. Civ. App.--Houston [14th Dist.] 1980, writ ref'd n.r.e.). Here,
appellants neither rebut the presumption, nor explain why they have no duty to do so. Issue
two is overruled.

 In issue three, appellants assert that because the covenant not to compete is
unsupported by valid consideration, the trial court abused its discretion by enforcing the
covenant. Appellants maintain SSG provided evidence only of "promises" and "past
consideration," and neither is sufficient to support the covenant. 

 Whether a covenant not to compete is enforceable is a question of law. Light v. Centel
Cellular Co. of Tex., 883 S.W.2d 642, 644 (Tex. 1994). A covenant not to compete is
enforceable if it (1) is ancillary to or part of an otherwise enforceable agreement at the time
the agreement is made and (2) contains limitations as to time, geographical area, and scope
of activity to be restrained that are reasonable and do not impose a greater restraint than is
necessary to protect the goodwill or other business interest of the promisee. See Tex. Bus.
& Com. Code Ann. § 15.50(a) (Vernon 2002). 

 Of course, an "otherwise enforceable agreement" is a contract and, as such, must be
supported by consideration. Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 885 (Tex.
App.--Dallas 2003, no pet.). An at-will employment relationship, (2) by itself, does not
constitute an otherwise enforceable agreement because it is not binding on either the
employee or the employer. Martin v. Credit Protection Ass'n, Inc., 793 S.W.2d 667, 670
(Tex. 1990). However, an otherwise enforceable agreement may arise from an at-will
employment relationship so long as independent consideration is given in exchange for a
promise and is not illusory. See Light, 883 S.W.2d at 645-46. 

 In relevant parts of the Agreement here, Wright promised, for twelve months after
ceasing to be an employee, he would not:

 (a) conduct or assist others in conducting any sales related activities for a business
related to the promotion, marketing, distribution, manufacturing, sourcing, importing and/or
sale of sports related equipment and/or supplies to institutional customers (including, for
example, schools, government agencies, athletic clubs, youth sport leagues, and recreational
organizations, . . . .)

 (b) call on, solicit, take away, or accept the business of, or attempt to call on, solicit,
take away, or accept the business of any of SSG's customers or clients that conduct business
with SSG in Wright's sales region; or

 (c) induce, attempt to induce any customer or client to discontinue its relationship with
SSG or its affiliates; or

 (d) recruit, hire, assist others in recruiting or hiring any SSG employee or person who
was an SSG employee during the preceding twelve (12) month period. Wright also agreed
he would not during or after his employment with SSG (i) disclose confidential information
to any person or entity other than in connection with his employment with SSG in accordance
with SSG's policies or (ii) make use of any confidential information for his own purposes
or for the benefit of any other person or entity, other than SSG. 

 In exchange for Wright's nondisclosure and noncompetition promises, SSG agreed
to provide Wright with: (1) portable laptop computers, and equipment necessary to use them,
including modems and instruction manuals; (2) on-line and unrestricted access to SSG's
confidential and proprietary databases: customer, inventory, supplier, distributor, vendor,
order, accounts receivable, accounts payable, product, cost and pricing; and (3) specialized
training, developed at company expense and by SSG uniquely for use with SSG's outside
sales force, regarding methods and techniques for using and interpreting the information on
the databases. 

 The record here shows (1) Wright had received the computer before signing the
Agreement; (2) he received training the year before he signed the agreement and the year
after the execution of the agreement; and (3) Wright received confidential information
regarding sales, customers' purchasing history and price lists before and after signing the
Agreement. SSG does not argue that it provided any consideration to Wright
contemporaneously with the Agreement's execution. 

 According to Wright, because all of SSG's promises are illusory, they are insufficient
to support the Agreement's noncompetition clauses; therefore, Wright asserts, SSG has failed
to demonstrate a probable right to relief. Citing CRC-Evans Pipeline Intern., Inc. v. Myers,
927 S.W.2d 259, 263 (Tex. App.--Houston [1st Dist] 1996, no writ), Wright contends that
the precise time that is critical to determining whether a covenant is ancillary to or part of an
otherwise enforceable agreement "is the moment the agreement is made." Id., (citing Light,
883 S.W.2d at 644-45) (emphasis in original). Wright further asserts Texas contract law,
generally, and the Light decision, specifically, require a contemporaneous exchange of
consideration in order for a contract to be "otherwise enforceable," and, thus, one that could
contain an enforceable noncompete covenant. (3) 

 Several of our sister courts generally agree the time when an agreement is made is the
relevant time for determining whether the agreement is otherwise enforceable. In Strickland
v. Medtronic, Inc., the Dallas court recently reversed a trial court's order granting temporary
injunction. See Strickland v. Medtronic, Inc., 97 S.W.3d 835, 839 (Tex. App.--Dallas 2003,
pet. dism'd w.o.j.). The Strickland Court did not agree that contract obligated the employer
to provide confidential information to the employee, but instead stated:


 However, even assuming that by this provision Medtronic impliedly
promised to provide confidential information to Strickland, we conclude such
a promise is illusory because it necessarily depends on a period of
employment. Medtronic could avoid this obligation by simply firing
Strickland on the day the employment agreement was executed. Medtronic
also argues the fact that Medtronic provided "immediate training" to
Strickland in consideration for her execution of the employee agreement is an
additional basis supporting the existence of an otherwise enforceable
agreement. We disagree. At best, the record indicates that Medtronic sent
Strickland some "pre-study materials" prior to the execution of the
employment agreement and gave her training during the initial months of her
employment. The relevant inquiry under section 15.50, however, is whether,
at the time the agreement is made, there exists a binding promise to train. See 
Light, 883 S.W.2d at 644-45. No such promise exists in this case.


Id. (emphasis added).

 Other courts also have emphasized that the time the agreement is made is the relevant
time to determine whether nonillusory promises exist. See Alex Sheshunoff Mgmt. Servs.
L.P. v. Johnson, 124 S.W.3d 678, 686 (Tex. App.--Austin 2003, pet. filed) (that employer
"gave new confidential information and training to [employee] some time after entering into
the agreement will not suffice; we must evaluate the consideration given at the time the
agreement was made."); Anderson Chemical Co., Inc. v. Green, 66 S.W.3d 434, 438 (Tex.
App.--Amarillo 2001, no pet.) (emphasis in original) (promise not to disclose proprietary
information "which is later accepted by the employer's performance in providing that
information to the employee is a unilateral contract that cannot support a covenant not to
compete because it is not otherwise enforceable at the time it is made.").

 On the other hand, SSG maintains the Agreement is an "otherwise enforceable" one
because SSG was contractually obligated to provide confidential information and training
to Wright and further contends there is no requirement that the employer provide
consideration contemporaneously with the execution of the contract. Several cases support
SSG's argument. See Guy Carpenter & Co. Inc. v. Provenzale, 334 F.3d 459, 466 (5th Cir.
2003) (declining to adopt the construction of the "ancillary to or part of" test that would
require the exchange of trade secrets itself to be the "otherwise enforceable agreement" and
that would require the promise to provide trade secrets itself to be the nonillusory
consideration. "To hold otherwise would pin the enforceability of non-solicitation
agreements on whether an employer discloses confidential information at the time the
employee signs an employment contract. This is not what Light, or [Tex. Bus. & Com. Code
Ann.] §15.50, intends or requires."); Curtis v. Ziff Energy Group, Ltd., 12 S.W. 3d 114, 118
(Tex. App.--Houston [14th Dist.] 1999, no pet.) (found a nonillusory promise where
employer promised to provide confidential information and trade secrets to prospective
employee and, in return, prospective employee promised not to disclose or use the trade
secrets until after his employment.); Ireland v. Franklin, 950 S.W.2d 155, 158 (Tex. App.--San Antonio 1997, no writ) (employer's consideration was its promise to share trade secrets;
employee's consideration was her promise not to disclose or use the trade secrets during or
after her employment; the noncompete covenant is ancillary to the trade secret clause because
employer's consideration gives rise to its interest in restraining employee from competing,
and the covenant not to compete is designed to enforce employee's consideration not to
disclose or use the trade secrets. (4)). 

 Here, the consideration provided by SSG is the sort Light deemed permissible as
explained in Ireland. See Light, 883 S.W.2d at 647 n.14; Ireland, 950 S.W.2d at 158. 
Subsequent to signing the agreement, SSG, on a daily basis, made confidential information
available to Wright. Wright himself testified that he regularly accessed SSG's computer
programs related to sales and customer information, and, in fact "logged on" almost every
night. He continued to have access to the program, which was continually updated as new
orders were received, after he signed the Agreement. Wright also acknowledged he received
training at SSG's national sales conferences and that he attended the 2002 conference after
executing the Agreement. The Agreement obligated SSG to provide confidential information
and training and the record establishes it did so. Therefore, we find there was adequate
consideration to support the covenant not to compete. Issue three is overruled.

 Issue four argues that the Agreement's noncompete covenant is unreasonable as a
matter of law. We agree. 

 Covenants not to compete are restraints of trade, and unenforceable as a matter of
public policy unless they are reasonable restraints. See John R. Ray & Sons, Inc. v. Stroman,
923 S.W.2d 80, 85 (Tex. App.--Houston [14th Dist.]1996, writ denied); see Tex. Bus. &
Com. Code Ann. § 15.50(a) (Vernon 2002). A restrictive covenant is unreasonable unless
it bears some relation to the activities of the employee. See Peat Marwick Main & Co. v.
Haass, 818 S.W.2d 381, 386-87 (Tex. 1991). A covenant not to compete that contains an
industry-wide exclusion from subsequent employment is unenforceable. See Stroman, 923
S.W.2d at 85 (citing Haass, 818 S.W.2d at 386-88). Further, a covenant not to compete that
extends to clients with whom a salesman had no dealings during his employment is
unenforceable. Id. (citing Haass, 818 S.W.2d at 386-88; Daytona Group of Tex., Inc. v.
Smith, 800 S.W.2d 285, 288 (Tex. App.--Corpus Christi 1990, writ denied)); see also
Hargrave v. Giuffre, 1999 WL 1270783 at *1 (Tex. App.-- Beaumont December 30, 1999,
no pet.) (not designated for publication) (covenant not to compete not enforceable where it
was "not limited to those clients whom [Defendant] serviced or had dealings with while at
the agency.").

 Here, the Agreement prohibits Wright from, either directly or indirectly, conducting
any sales related activities for a business related to the promotion, marketing, distribution,
manufacturing, sourcing, importing and/or sale of sports related equipment and/or supplies
to institutional customers in certain counties. The Agreement further prohibits Wright from
doing business with the "customers, suppliers, clients, licensors, licensees, distributors,
dealers, or independent salespersons of SSG or any its affiliates" that conduct business in
Wright's sales district. These covenants do not limit the prohibitions just to customers with
whom Wright had dealings while he was employed by SSG. (5) Thus, the covenants are over
broad and are unreasonable restraints of trade. (6)
 See Stroman, 923 S.W.2d at 85. 
Consequently, the trial court abused its discretion by granting the temporary injunction. 
Issue four is sustained. Our disposition of this issue makes it unnecessary to address
Wright's remaining arguments. 

 We must now determine whether to reform the agreement and injunction or remand
this cause to the trial court. 

 Instead of invalidating covenants not to compete, Texas courts usually have reformed
them by revising the unenforceable provisions to those that would be reasonable under the
circumstances. See Butler v. Arrow Mirror & Glass, Inc., 51 S.W.3d 787, 794 (Tex. App.--Houston [1st Dist.] 2001, no pet.). While Appellants maintain we should reverse without
reforming the injunction since SSG did not request reformation, no request is required under
section 15.51 of the Texas Business and Commerce Code. Tex. Bus. & Com .Code Ann.
§ 15.51(c) (Vernon 2002). Instead, section 15.51(c) requires the court to reform a covenant
that it finds unreasonable as to time, geographical area, or scope of activity. (7)
 Moreover, our 
rules of appellate procedure generally require us to render the judgment the trial court should
have rendered. See Tex. R. App. P. 43.3. An exception, however, exists when remand is
necessary for further proceedings. Id. at (a). 

 Because here the record is unclear who Wright's customers were when he worked for
SSG, further proceedings are required. Therefore, we reverse the trial court's order granting
temporary injunctive relief and thereby dissolve the temporary injunction; we also remand
the cause to the trial court for further proceedings consistent with this opinion.



 _________________________________

 DON BURGESS

 Justice


Submitted on February 16, 2004

Opinion Delivered April 29, 2004



Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. In response to issues one and two, SSG asks us to reconsider NMTC Corp. v.
Conarroe, 99 S.W.3d 865 (Tex. App.--Beaumont 2003, no pet.). In Conarroe, we concluded
the trial judge did not err in applying the common law prerequisites to the denial of a request
for temporary injunction in a case involving a covenant not to compete. Id. at 868. SSG
maintains that section 15.52 of the Texas Business and Commerce Code preempts common
law injunction standards. Thus, when seeking an injunction based on violations of a
covenant not to compete enforceable under section 15.50, an applicant, SSG argues, need
show only that a defendant has violated such a covenant, but is not required also to show
irreparable harm and inadequacy of legal remedy. 

 We decline to revisit our Conarroe decision and further note another of our sister
courts has ruled similarly. See Cardinal Health Staffing Network, Inc. v. Bowen, 106 S.W.3d
230, 241 (Tex. App.--Houston [1st Dist.] 2003, no pet.). In Bowen, the First Court held
equitable temporary-injunction rules have not been preempted, thereby overruling its earlier
decision in Norlyn Enterprises, Inc. v. APDP, Inc., 95 S.W.3d 578 (Tex. App.--Houston [1st
Dist.] 2002, no pet.). Id.
2. That Wright was an at-will employee of SSG is undisputed. 
3. Emphasizing footnote 14 in Light and its use of present tense, Wright argues that
Light requires a contemporaneous exchange of consideration. Footnote 14 states: "Thus if
an employer gives an employee confidential and proprietary information or trade secrets in
exchange for the employee's promise not to disclose them, and the parties enter into a
covenant not to compete, the covenant is ancillary to an otherwise enforceable agreement .
. .." Light, 883 S.W. 2d at 647 n.14 (emphasis added by appellants).
4. The Ireland Court stated: "This is the situation blueprinted by the Texas Supreme
Court. See Light, 883 S.W.2d at 647 n. 14 (explaining that if employer gave confidential
information or trade secrets in exchange for employee's promise not to disclose them, then
covenant not to compete would be ancillary to otherwise enforceable agreement)." Ireland,
950 S.W.2d at 158.
5. We have located no Texas Supreme case defining "dealings" in relation to covenants
not to compete. For purposes of this case, those SSG customers with whom Wright had
"dealings" shall mean any customers he called on and any customers within his territory
whose purchases were used to determine his compensation, regardless of whether he made
the initial sales contact.
6. The trial court may have intended to restrict the unreasonable nature of the
covenants with the temporary injunction, which only restricts Wright from doing business
with the persons or entities listed in Exhibit 8. Assuming, without deciding, that the trial
court did so intend, the injunction does not resolve the problem. While Exhibit 8 lists all of
the customers in Dan Wright's district, it identifies them for the "calendar period from
2003/01 to 2003/10." Wright, however, resigned on July 31, 2003 - several months before
the end of the document's calendar period. Thus, what is not clear is whether Exhibit 8
contains only the customers with whom Dan Wright had dealings or whether it also lists new
customers obtained since Wright left. 

7. Before its amendment in 1993, section 15.51 permitted the trial court to reform
unreasonable limits within noncompete covenants only at the request of the promisee. See 
Gomez v. Zamora, 814 S.W.2d 114, 119 (Tex. App.--Corpus Christi 1991, no writ).