CRC–EVANS PIPELINE
INTERNATIONAL,
INC., Appellant,

v.

Randolph P. MYERS, Jr., and Bobby
Shell Sanford, Appellees.

No. 01–96–00234–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 18, 1996.

Charles L. Babcock, David T. Moran, Leslie G. Ashby, Houston, for Appellant.

Russell B. Starbird, Houston, for Appellees.

Before MIRABAL, COHEN and ANDELL, JJ.

## OPINION

MIRABAL, Justice.

This is an interlocutory appeal[1] from the denial of a request for a temporary injunction to enforce covenants not to compete, and

---

1. This interlocutory appeal is brought pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(4)

to prohibit the disclosure of trade secrets. We affirm.

CRC–Evans Pipeline International, Inc. (CRC) manufactures, sells, and leases specialized tools used in the construction of pipelines worldwide. The automatic internal welder is a tool developed by CRC, and it considers the welder to be a trade secret. Appellees, Randolph P. Myers, Jr., and Bobby Shell Sanford, are former employees of CRC, and both have experience working with the automatic internal welder.

On December 29, 1995, CRC filed suit against appellees alleging that they had breached written covenants not to compete by working for businesses in direct competition with CRC, and that they had breached contractual and common law duties not to disclose trade secrets and confidential information obtained during their employment with CRC. CRC was granted a temporary restraining order on December 29, 1995. On January 12, 1996, the trial court held an evidentiary hearing, following which the trial court denied CRC's request for a temporary injunction.

The trial court made the following findings of fact and conclusions of law:

### Findings of Fact

1. Myers executed an Employment and Confidential Information Agreement with CRC on December 1, 1989 ("Myers' Employment Contract").

2. In Myers' Employment Contract, Myers agreed not to engage in any business which was in direct competition with CRC for a period of two years following his termination of employment with CRC.

3. In Myers' Employment Agreement, Myers further acknowledged that he has received or will receive trade secrets and confidential information of CRC in order for him to perform his duties and agreed not to disclose to anyone outside of CRC such trade secrets or confidential information of CRC either during or after his employment with CRC.

(Vernon Supp.1996).

4. Myers terminated his employment with CRC on March 1, 1995.

5. Myers was hired by Noreast Services and Pipelines Limited ("Noreast") in 1995.

6. Noreast is in direct competition with CRC.

7. Sanford executed an Employment & Proprietary Information Agreement with CRC on March 28, 1994 ("Sanford's Employment Contract").

8. In Sanford's Employment Contract, Sanford agreed not to engage in any business which was in direct competition with CRC for a period of two years following his termination of employment with CRC.

9. In Sanford's Employment Contract, Sanford further acknowledged that he has received or will receive trade secrets and confidential information of CRC in order for him to perform his duties and agreed not to disclose to anyone outside of CRC any proprietary information either during or after his employment with CRC.

10. Sanford terminated his employment with CRC on August 8, 1994.

11. Sanford subsequently became employed with O.J. Pipelines Corp. ("O.J. Pipelines").

12. O.J. Pipelines is in direct competition with CRC.

13. Any conclusion of law which should be construed as a finding of fact is hereby adopted as such.

### Conclusions of Law

1. CRC is not entitled to a temporary injunction enforcing the covenant not to compete clause contained in Myers' Employment Contract because the covenant not to compete clause was not ancillary to or part of an otherwise enforceable agreement and was, therefore, not enforceable. TEX. BUS. & COM.CODE ANN. § 15.50.

2. CRC is not entitled to a temporary injunction enforcing the covenant not to compete clause contained in Sanford's Employment Contract because the covenant not to compete clause was not ancillary to or part of an otherwise enforceable agreement and was, therefore, not enforceable. TEX. BUS. & COM.CODE ANN. § 15.50.

3. CRC is not entitled to a temporary injunction enjoining Myers from disclosing CRC's trade secrets because the nondisclosure clause contained in Myers' Employment Contract was not enforceable.

4. CRC is not entitled to a temporary injunction enjoining Sanford from disclosing CRC's trade secrets because the nondisclosure clause contained in Sanford's Employment Contract was not enforceable.

5. Any finding of fact which should be construed as a conclusion of law is hereby adopted as such.

■ In its first point of error, CRC asserts the trial court abused its discretion by denying CRC's request for a temporary injunction to enforce the covenants not to compete in appellees' employment contracts with CRC.

■ The decision to grant or deny a temporary injunction lies in the sound discretion of the trial court, and the court's grant or denial is subject to reversal only for a clear abuse of that discretion. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993). The appellate court is not to substitute its judgment for that of the trial court, but must only determine whether the court's action was so arbitrary as to exceed the bounds of reasonable discretion. *Philipp Bros., Inc. v. Oil Country Specialists, Ltd.*, 709 S.W.2d 262, 265 (Tex.App.—Houston [1st Dist.] 1986, writ dism'd w.o.j.).

■ In reviewing an order granting or denying a temporary injunction, the appellate court draws all legitimate inferences from the evidence in a manner most favorable to the trial court's judgment. *Valenzuela v. Aquino*, 763 S.W.2d 43, 44 (Tex.App.—Corpus Christi 1988, no writ); *Metropolitan Life Ins. Co. v. La Mansion Hotels & Resorts, Ltd.*, 762 S.W.2d 646, 648 (Tex.App.—San Antonio 1988, writ dism'd). Abuse of discretion does not exist if the trial court heard conflicting evidence, and evidence appears in the record that reasonably supports the trial court's decision. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Recon Exploration, Inc. v. Hodges*, 798 S.W.2d 848, 852 (Tex.App.—Dallas 1990, no writ).

■ When specific findings of fact and conclusions of law are filed and a statement of facts is before the appellate court, the findings will be sustained if there is evidence to support them, and the appellate court will review the legal conclusions drawn from the facts found to determine their correctness. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

■ The Covenants Not to Compete Act, TEX. BUS. & COM.CODE ANN. §§ 15.50–.52 (Vernon Supp.1996), governs the enforceability of the involved covenants not to compete, as well as the procedures and remedies in an action such as this one. *Light v. Centel Cellular Co. of Texas,* 883 S.W.2d 642, 644 (Tex.1994). The enforceability of a covenant not to compete is a question of law for the court. *Id.*

■ Section 15.50 reads in relevant part:

[A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COM.CODE ANN. § 15.50 (Vernon Supp.1996). In the present case, we are concerned only with the first of the two criteria for enforceability of a covenant not to compete, i.e., whether each covenant not to compete involved here was "ancillary to or part of an otherwise enforceable agreement at the time the agreement [was] made."[2] Under section 15.50, the relevant point in time is *the moment the agreement is made*; the issue is whether, "at the time the agreement is made," there exists other mutually binding promises to which the covenant not to compete is ancillary or part and parcel. *Light,* 883 S.W.2d at 644–45.

■ Both Myers and Sanford were "at-will" employees of CRC. An "otherwise enforceable agreement" can emanate from at-will employment, but only so long as the consideration for a promise is not *dependent* on a period of continued employment. A promise *dependent on a period of continued employment* would be illusory because it fails to bind the promisor, who always retains the option of discontinuing employment in lieu of performance. *Light,* 883 S.W.2d at 644.[3]

In the agreements between appellees and CRC, in addition to the covenants not to compete, appellees made the following non-illusory promises: 1) not to publish or disclose trade secrets or confidential technical or business information, data, or material of CRC during or after employment; 2) to leave at CRC, upon termination of employment, all documents, records, blueprints, notebooks, customer sales lists, or other repositories containing trade secrets, or confidential information, or other proprietary information; and 3) to disclose and convey to CRC all technological ideas, inventions, improvements, and discoveries related to any present or prospective business of CRC, and to assist in obtaining and maintaining patents and copyrights.

In return, CRC promised employment, and the payment of a salary and/or other remuneration. CRC also impliedly promised to give appellees trade secrets and proprietary information necessary to perform their duties.

The main issue in this case is whether CRC's return promises are "illusory." If they are "illusory," then they do not constitute valid consideration for appellees' promises made *in addition to* the covenants not to

---

**2.** Our inquiry is restricted to the first criteria because the trial court's findings of fact and conclusions of law do not address the second criteria, i.e., the reasonableness of the restraint as to time, geographical area, and scope of activity.

**3.** For instance, a promise of a raise in wages to an at-will employee is illusory because it is dependent upon some period of continued employ-

ment; the employer could fire the employee and be under no obligation to perform the promise. *Light,* 883 S.W.2d at 645 n. 5. In contrast, a promise to give 14-days written notice to terminate employment, or to provide an inventory upon termination, would not be "illusory" because it binds the promisor even though employment ends. *Id.* at 646.

compete, meaning no "otherwise enforceable agreement" would have existed *at the time* each agreement was made.

Appellant and appellees each claim that the *Light* case supports their respective positions. In *Light,* the employer agreed to provide "initial specialized training" to the employee. 883 S.W.2d at 646. The supreme court concluded this was *not* an "illusory" promise by the employer because "[e]ven if Light had resigned or been fired after this agreement was executed, [the employer] would still have been required to provide the initial training." *Id.* In other words, the employer's promise to provide "initial specialized training" was not *dependent on a period of continued employment.* Effectively, the employer had agreed to provide the specialized training immediately upon the employee's signing of the agreement, because, for this employee to perform her new duties, she needed *immediate* specialized training.

The present case is distinguishable. The evidence showed that Myers and Sanford each had worked for CRC in the past, and they came back to CRC after a number of years for *re-employment* at the same positions.

Myers was employed by CRC for six years in the 1970s, and he worked with CRC's internal welding equipment throughout that time. He was never asked to sign a non-compete or non-disclosure agreement during that six-year employment. In fact, when he left CRC in 1979, he was employed by customers of CRC who hired him to work on the same type of internal welding equipment that they had purchased from CRC. CRC never complained about Myers utilizing its trade secrets and proprietary information during that 10–year period. When Myers was re-employed by CRC in 1989, he was asked to sign the involved at-will employment agreement. Myers was re-employed in the same position he had held with CRC in the 1970s. He testified that, during his six years of re-employment (1989–1995), he did not learn

anything new about CRC's internal welding equipment, and he did not receive any specialized training after signing the employment agreement. The trial court could have reasonably concluded that Myers was a 16–year veteran at operating CRC's internal welding equipment who did not need, or receive, any new trade secrets or confidential information subsequent to his signing the at-will employment agreement.

▮ Sanford was first employed by CRC for five years, from 1984 to 1989. His job was to maintain CRC's automatic internal welding equipment. Sanford did not sign a non-compete or non-disclosure agreement during that time. Sanford left CRC for five years, during which he continued to work as an internal welding machine technician for various contractors. Sanford was re-employed by CRC in March 1994, when he was asked to sign the involved at-will employment agreement. Sanford testified that he did not attend any training seminars after signing the agreement and did not learn anything he did not already know during his re-employment. Sanford's re-employment lasted only four-and-a-half months, from March 28, 1994, to August 8, 1994. The trial court could have reasonably concluded that Sanford, like Myers, was a veteran at operating and maintaining CRC's internal welding equipment, and that he did not need, or receive, any new trade secrets or confidential information subsequent to his signing the at-will employment agreement.[4]

In *Light,* if it were not for the duty of the employer to provide necessary specialized training immediately upon the singing of the employment agreement, there would have been no "otherwise enforceable agreement" to which the covenant not to compete was "ancillary" or "a part of." 883 S.W.2d at 645–46. Every other promise by the employer in the agreement with Light (i.e., the promise to employ at-will, the promise to pay salary and commissions, and the promise to provide a package of employee benefits) was "illusory," as each was dependent upon some

---

4. We are aware that CRC's witnesses gave controverting testimony. However, the evidence regarding the dates of employment and job positions of Myers and Sanford was substantially consistent. When there is conflicting evidence, there is generally no abuse of discretion by the trial court. *Davis,* 571 S.W.2d at 862.

interval of continued at-will employment. *Id.* at 646 n. 9.

In the present case, the trial court could have reasonably concluded that there was no need for, and no duty to provide, initial specialized training to Myers or Sanford immediately upon their signing of the at-will employment agreements. The trial court could have concluded that, at most, there was an implied promise to provide appellees specialized training sometime during their employment, if and when needed. Such a promise by CRC to perform was illusory "at the time the employment agreements were signed" because CRC could fire Myers and Sanford and escape the obligation to perform. *See Light,* 883 S.W.2d at 645 n. 6. Further, as in *Light,* all of the other promises by CRC (to employ at-will, and to pay a salary and other remuneration) were illusory. *Id.* at 646 n. 9.

We cannot say the trial court abused its discretion when it concluded, as a matter of law, that the involved covenants not to compete were unenforceable because they were not "ancillary to or part of otherwise enforceable agreements", as required by TEX. BUS. & COM.CODE ANN. § 15.50 (Vernon Supp.1996).

Accordingly, we overrule CRC's point of error one.

■ In its second point of error, CRC asserts the trial court abused its discretion by denying CRC's request for a temporary injunction to prohibit appellees from disclosing CRC's trade secrets.

The trial court specifically found that CRC was not entitled to a temporary injunction enjoining Myers and Sanford from disclosing CRC's trade secrets, because the nondisclosure clauses in both the Myers and Sanford agreements were unenforceable.

■ CRC argues that appellees are contractually prohibited from disclosing its trade secrets. Non-disclosure covenants are more readily enforced than non-compete covenants, because they are not restraints on trade, as are non-compete covenants. *See Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 663 (Tex.App.—Dallas 1992, no writ). Non-disclosure covenants do not necessarily restrict a former employee's ability to compete with the former employer, but instead, pre-vent only the disclosure of trade secrets and confidential information acquired by the former employee. *Id.*

In appellees' respective at-will employment agreements, each "acknowledge[d] that he has received or will receive disclosure of the Company's trade secrets and confidential information required for him to perform highly skilled duties of the Company," and each agreed not to disclose to anyone outside CRC such trade secrets or confidential information either during or after his employment with CRC.

Because the trial court could have reasonably concluded from the evidence that no *new* trade secrets were learned by appellees during the period of their *re-employment* with CRC, the issue becomes whether the non-disclosure covenants are enforceable with regard to trade secrets learned by appellees during their *first term* of employment, prior to the signing of the non-disclosure agreements.

*At the moment* the non-disclosure agreements were made, they would have been unenforceable because past consideration, such as the sharing of trade secrets in the past, will not support a subsequent promise. *Light,* 883 S.W.2d at 645 n. 6. This is because "consideration" is a present exchange bargained for in return for a promise. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 496 (Tex.1991); *Mason v. Babin,* 474 S.W.2d 809, 812 (Tex.Civ.App.—Waco 1971, writ ref'd n.r.e.). However, in our current analysis we are not confined to looking only "at the time the agreement is made," as we were confined by section 15.50 with regard to covenants not to compete. It could be argued that *new* consideration was given for appellees' agreement not to disclose *past-learned* trade secrets, such as CRC's *actual employment* of appellees, and the payment to them of compensation, in return for their bargained-for employment agreements that included covenants not to disclose trade secrets.

Assuming, without deciding, that such *actual employment* alone, pursuant to the at-will employment agreements, was sufficient consideration to bind appellees to their

agreements not to disclose previously-learned trade secrets, we must still examine whether the previously-learned trade secrets had maintained their trade secret status. Information otherwise qualifying as a trade secret may lose its "secret" status when disclosed to others with the employer's blessing. *Numed, Inc. v. McNutt,* 724 S.W.2d 432, 435 (Tex.App.—Fort Worth 1987, no writ); *Rimes v. Club Corp. of America,* 542 S.W.2d 909, 913 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.).

In the present case, the trial court could have reasonably believed, with regard to any trade secrets appellees had acquired during their first terms of employment, that CRC had abandoned the essential element of secrecy as to that information. CRC knew Myers and Sanford accepted employment, after first working at CRC, where they utilized their training and knowledge obtained at CRC regarding internal welding equipment. The trial court could have concluded that not only did CRC not object, it practically encouraged appellees in their new endeavors, involving CRC customers who had bought CRC welding equipment, knowing appellees would necessarily use and disclose proprietary information regarding the internal welding equipment. An agreement not to disclose what was once "trade secret" information, which has lost its trade secret status with the consent of the employer, is not enforceable. *See Numed,* 724 S.W.2d at 435; *Rimes,* 542 S.W.2d at 913.

We cannot say the trial court abused its discretion when it concluded, as a matter of law, that the nondisclosure clauses contained in appellees' at-will employment contracts were not enforceable.

Accordingly, we overrule point of error two.

We affirm the judgment.