NUMBER 13-07-364-CV


COURT OF APPEALS
 


THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


SHORELINE GAS, INC., Appellant,


v.


CHUCK MCGAUGHEY, Appellee.

 
 

On appeal from the County Court at Law No. 2 

of Nueces County, Texas

 

 

MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Vela


Memorandum Opinion by Justice Garza


 Appellant Shoreline Gas, Inc. ("Shoreline") appeals from the denial of its application
for a temporary injunction against appellee Chuck McGaughey, its former employee, under
the non-competition, non-solicitation, and non-disclosure provisions of a Confidentiality and
Non-Competition Agreement ("Agreement") signed by McGaughey. The trial court found
these provisions to be invalid and unenforceable. This accelerated interlocutory appeal
ensued. See Tex. R. App. P. 28.1. By four issues, Shoreline argues that the trial court
abused its discretion in denying its application for temporary injunctive relief. We affirm the
judgment of the trial court.I. Factual and Procedural Background

 Shoreline is in the natural gas marketing business. It purchases gas from gas
producers and then sells or markets that gas to other entities. McGaughey was hired by
Shoreline in 2002 as a gas supply representative and was expected to solicit gas
producers, purchase gas from such gas producers, negotiate contracts, and maintain and
expand Shoreline's relationships with new and existing producers. It is undisputed that
McGaughey was an at-will employee. As a condition of his hiring, McGaughey was
required to sign the Agreement, which contained non-competition, non-solicitation, and
non-disclosure covenants. Although McGaughey disputes the circumstances under which
he signed the Agreement, (1) it is undisputed that he signed the Agreement immediately upon
commencing his employment with Shoreline.

 Shoreline abruptly terminated McGaughey's employment on April 25, 2007. Shortly
thereafter, Shoreline brought suit against McGaughey seeking a declaratory judgment that
the non-compete, non-solicitation, and non-disclosure provisions of the Agreement are
enforceable, and seeking temporary and permanent injunctive relief. Shoreline also served
McGaughey with a temporary restraining order requiring him to abide by those provisions. 
McGaughey filed a first amended original answer denying Shoreline's allegations generally,
and pleading specifically waiver and estoppel, collateral estoppel, failure of Shoreline to
verify its petition for injunction, and failure of Shoreline to allege with specificity a probable
injury.

 After temporary injunction hearings on May 7, 22, and 23, 2007, the trial court
denied Shoreline's request for temporary injunction. Specifically, the trial court's order of
June 6, 2007 stated as follows:

ORDER DENYING INJUNCTIVE RELIEF


 On May 7, 2007, the court called for hearing the motion of plaintiff
Shoreline Gas, Inc., for injunctive relief. All parties appeared and announced
ready. Having heard the evidence and argument of counsel, the court finds
that the [sic] all of the provisions of the Confidentiality and Non Competition
Agreement signed by defendant Chuck McGaughey which limit in any way
defendant's right to compete with plaintiff or to solicit plaintiff's customers are
unenforceable.


 It is ORDERED that all injunctive relief requested by plaintiff, including
that relief based upon paragraphs 4 (Non-disclosure or Use of Trade
Secrets), 5 (Non-disclosure or Use of Confidential Information), 7 (Non
competition), and 8 (Non-solicitation of Accounts) of the Confidentiality and
Non Competition Agreement, is DENIED.


 Neither party requested, nor did the trial court supply, findings of fact or conclusions
of law. Following the court's denial of its request for a temporary injunction, Shoreline filed
its notice of interlocutory appeal. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4)
(Vernon Supp. 2007). Shoreline contends that the trial court abused its discretion by
denying its application for temporary injunction. Specifically, Shoreline argues that the trial
court erred by: (1) finding the non-compete covenant of the Agreement to be
unenforceable; (2) finding the non-solicitation covenant of the Agreement to be
unenforceable; (3) finding the non-disclosure covenant of the Agreement to be
unenforceable; and (4) refusing to reform the geographical area, scope of activity, and time
of the various covenants of the Agreement and to enforce them as reformed pursuant to
section 15.51(c) of the Texas Business and Commerce Code. See Tex. Bus. & Com. Code
Ann. § 15.51(c) (Vernon Supp. 2007).

II. Standard of Review

 The decision to grant or deny a temporary injunction lies in the sound discretion of
the trial court, and the court's ruling is subject to reversal only for a clear abuse of
discretion. Walling v. Metcalfe, 863 S.W.2d 56, 57 (Tex. 1993). In reviewing an order
granting or denying a temporary injunction, we must view the evidence in the light most
favorable to the trial court's decision, indulging every reasonable inference in its favor. See
Diesel Injection Sales & Serv., Inc. v. Gonzalez, 631 S.W.2d 193, 195 (Tex. App.-Corpus
Christi 1982, no writ). However, a trial court abuses its discretion in denying a temporary
injunction when it misapplies the law to the established facts. See Loye v. Travelhost, Inc.,
156 S.W.3d 615, 619 (Tex. App.-Dallas 2004, no pet.) (op. on reh'g); see also State v. Sw.
Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975).

 It is well established that when no findings of fact or conclusions of law are
requested or filed, we must uphold the trial court's judgment on any legal theory supported
by the record. See, e.g., Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); Seaman v.
Seaman, 425 S.W.2d 339, 341 (Tex. 1968). Here, the trial court did include in its order a
finding that the non-compete, non-solicitation, and non-disclosure provisions of the
Agreement are "invalid and unenforceable." Shoreline argues that the trial court, with this
statement, has arrived at a conclusion of law on the final issue of the enforceability of those
provisions, and that our review is therefore limited to this conclusion. We disagree. Even
if we were to assume that this statement was in fact a conclusion of law, such conclusions,
although "helpful" in our review of an interlocutory order, are not binding in our
determination of whether a trial court has abused its discretion. See Tom James of Dallas,
Inc. v. Cobb, 109 S.W.3d 877, 884 (Tex. App.-Dallas 2003, no pet.); see also IKB Indus.
(Nigeria), Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 442 (Tex. 1997); Chrysler Corp. v.
Blackmon, 841 S.W.2d 844, 852 (Tex. 1992). Accordingly, we use the standard of review
applicable to cases where no findings of fact or conclusions of law have been requested
or filed. See Davis, 571 S.W.2d at 862. 

 Moreover, despite the breadth of the trial court's language in declaring the
contractual provisions unenforceable, the ultimate issue of enforceability was not before
the trial court at the temporary injunction hearing, and it is not before this court on appeal. 
See Tom James, 109 S.W.3d at 884-85. That is because the trial court's refusal to grant
a temporary injunction was based only on the record produced at the temporary injunction
hearing, not a full trial on the merits. Id. at 885. We will not assume that the evidence
taken at a preliminary hearing will be the same as the evidence developed at a trial on the
merits, and so we do not reach the ultimate issue of the enforceability of the non-compete,
non-solicitation, and non-disclosure provisions. Id. We will only address the enforceability
of those provisions insofar as its affects our analysis of whether the elements required for
issuance of a temporary injunction have been satisfied. See Tom James, 109 S.W.3d at
883; see also Diesel Injection Sales & Servs., Inc. v. Renfro, 656 S.W.2d 568, 571 (Tex.
App.-Corpus Christi 1983, writ ref'd n.r.e.) (prior appeals of denial of temporary injunction
did not determine reasonableness of non-compete covenant because review was restricted
to abuse of discretion; review in appeal from trial on merits is not so restricted).

III. Discussion

 The purpose of a temporary injunction is to preserve the status quo of the litigation's
subject matter pending trial on the merits. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204
(Tex. 2002); City of McAllen v. McAllen Police Officers Union, 221 S.W.3d 885, 893 (Tex.
App.-Corpus Christi 2007, pet. denied). A temporary injunction is an extraordinary remedy
and does not issue as a matter of right. Butnaru, 84 S.W.3d at 204. To obtain a temporary
injunction, the applicant must plead and prove three specific elements: (1) a cause of
action against the defendant; (2) a probable right to the relief sought; and (3) a probable,
imminent, and irreparable injury in the interim. Id. The party seeking the injunction bears
the burden of proving each of these elements. City of McAllen, 221 S.W.3d at 893. 

A. Cause of Action

 To satisfy the first element of the temporary injunction test, an applicant needs only
to plead a cognizable cause of action, and does not need to show a definite right to the
final relief sought. See Walling, 863 S.W.2d at 58 ("the issue in determining whether an
applicant has met the first qualification for a temporary writ of injunction is not whether the
prayer seeking the writ and the ultimate cause of action are related, but whether the
applicant has a cause of action at all."); Sun Oil Co. v. Whitaker, 424 S.W.2d 216, 218
(Tex. 1968) (holding that "an applicant is not required to establish that he will prevail on
final trial; he needs only to plead a cause of action and to show a probable right on final
trial to the relief he seeks and probable injury in the interim.")

 Shoreline, in its original petition, sought a final remedy of declaratory relief under
chapter 37 of the Texas Civil Practice and Remedies Code as well as permanent injunctive
relief. See Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (Vernon Supp. 2007). These
claims are cognizable under Texas law. We therefore conclude that Shoreline met the first
requirement to obtain a temporary injunction. See Butnaru, 84 S.W.3d at 204.

B. Probable Right to Relief

 The second element required for the issuance of a temporary injunction is a showing
of a probable right to relief upon a final trial on the merits. When the final relief sought is
injunctive in nature, the applicant must show a probable right on final hearing to a
permanent injunction. (2) See Sun Oil Co., 424 S.W.2d at 218. Shoreline has requested final
relief in the form of both injunctive and declaratory relief. Thus, to determine whether
Shoreline has a probable right to final relief, it is necessary for us to examine the
enforceability of the non-compete, non-solicitation, and non-disclosure provisions of the
Agreement.

1. Enforceability of the Covenant Not To Compete

 The non-compete covenant executed by Shoreline and McGaughey stated as
follows:

 7. Non competition. In recognition of the fact that the Company is
engaged in a business involving Confidential Information constituting trade
secrets and personal relationships with [a]ccounts and prospective accounts
and prospective business advantages, the success of which business is in
large part due to the exclusive retention of such Confidential Information and
continuation of such personal relationships with such Accounts, and for the
consideration recited above, I covenant and agree as follows: during my
employment with the Company, and for a period of two (2) years following
the date that I cease to be employed with the Company for any reason,
regardless of whether the cessation of my employment is voluntary or with
or without cause, I will not compete in any way with the business of the
Company anywhere within the geographical area specified in Exhibit "A" (the
"Area"), on behalf of myself or any other person or entity, or have a monetary
interest in any person, firm, corporation or entity that engages in business
similar to the business of the Company. For the purposes of this paragraph
and this covenant, the term "compete in any way with the business of the
Company" shall mean that I shall not, directly or indirectly, or on behalf of
any person or entity, call on, contact, solicit, handle business for, or perform
or render any services related to the buying, selling or marketing of natural
gas or related or derived hydrocarbons or hydrocarbon by-products to any
person, firm, corporation or other entity that is or was a former Account,
client, customer, or active prospect for business for the Company, or
business opportunity of the Company, during my employment and during the
twelve (12) months immediately prior to the date of termination or cessation
of my employment with the Company as evidenced by the books and records
of the Company.


 Covenants not to compete are generally considered restraints of trade and are
disfavored in law. See Tex. Bus. & Com. Code Ann. § 15.05(a) (Vernon Supp. 2007)
("Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful.");
see also Travel Masters, Inc. v. Star Tours, Inc., 827 S.W.2d 830, 832 (Tex. 1991). 
However, the Covenants Not to Compete Act (the "Act") sets forth certain circumstances
under which such covenants are enforceable. See Tex. Bus. & Com. Code Ann. §§
15.50-.52 (Vernon Supp. 2007). The Act provides in relevant part that:

 Notwithstanding Section 15.05 of this code, and subject to any
applicable provision of Subsection (b), a covenant not to compete is
enforceable if it is ancillary to or part of an otherwise enforceable
agreement at the time the agreement is made to the extent that it contains
limitations as to time, geographical area, and scope of activity to be
restrained that are reasonable and do not impose a greater restraint than is
necessary to protect the goodwill or other business interest of the promisee.


Id. § 15.50(a) (emphasis added).

 Therefore, under the Act, we must first determine whether the parties entered into
an "otherwise enforceable agreement" and we must then determine whether the non-compete covenant was "ancillary to or part of" that agreement. See id. If the answer to
both inquiries is affirmative, the non-compete covenant is enforceable as a matter of law
to the extent that it is reasonably restricted as to time, geographical area, and scope of
activity. See id.

i. "Otherwise Enforceable Agreement"

 An employer and an at-will employee cannot, by definition, have an "otherwise
enforceable agreement" pertaining to the duration of the employee's employment. 
However, "at-will employment does not preclude the formation of other contracts between
employer and employee." Light v. Centel Cellular Co. of Tex., 883 S.W.2d 642, 644 (Tex.
1994) (emphasis in original). In other words, an agreement must be supported by
consideration to be deemed "otherwise enforceable," but in the context of at-will
employment, that consideration cannot be dependent on a period of continued
employment. Id. Such a promise would be illusory in that it would fail to bind the promisor,
who always retains the option of discontinuing employment in lieu of performance. Id. at
645 (citing E. Line & Red River R.R. Co v. Scott, 10 S.W. 99, 102 (Tex. 1888) (noting that
in at-will employment, "it is no breach of contract to refuse to receive further services.")).

 However, an "otherwise enforceable agreement" can emanate from at-will
employment so long as the consideration for any promise is not illusory. See Light, 883
S.W.2d at 645. Even if one promise is illusory, a unilateral contract may still be
formed--the non-illusory promise can serve as an offer, which the promisor who made the
illusory promise can accept by performance. Id. at 645 n.6. The fact that the employer
was not bound to perform because he could have fired the employee is irrelevant; if he has
performed, he has accepted the employee's offer and created a binding unilateral contract. 
Id.

 The majority opinion in Light contained a footnote suggesting that such a unilateral
contract might not be sufficient to support a non-compete covenant, because it is not an
"otherwise enforceable agreement at the time the agreement is made" pursuant to section
15.50(a). 883 S.W.2d at 645 n.6 (citing Tex. Bus. & Com. Code Ann. § 15.50(a))
(emphasis added). Rather, it would only become enforceable upon the performance of the
employer, which would occur subsequent to the actual execution of the agreement. See
id. However, this suggestion was clearly rejected by the Texas Supreme Court in Alex
Sheshunoff Management Services, L.P. v. Johnson, 209 S.W.3d 644, 646 (Tex. 2006). 
In Sheshunoff, the court examined the enforceability of a non-compete covenant under
which the employer had no corresponding enforceable obligation at the time the agreement
was made--instead, the employer's obligations were only triggered by its performance
some time after the execution of the agreement. Id. at 650-51. Relying on the footnote
included in Light, the employee argued that the non-compete covenant was invalid
because there was no "otherwise enforceable agreement at the time the agreement [was]
made" as required by section 15.50(a). Id. at 650; see Light at 645 n.6; Tex. Bus. & Com.
Code Ann. § 15.50(a). The supreme court disagreed with the employee's interpretation
of the statute:

 Revisiting the issue of what the clause "at the time the agreement is
made" in the Act means, we conclude that we must disagree with Light's
view that a unilateral contract can never meet the requirements of the Act
because such a contract is not immediately enforceable when made. 
Section 15.50 states that "a covenant not to compete is enforceable if it is
ancillary to or part of an otherwise enforceable agreement at the time the
agreement is made . . . ." Simply reading the text, the clause "at the time the
agreement is made" can modify either "otherwise enforceable agreement" or
"ancillary to or part of." . . . We now conclude, contrary to Light, that the
covenant need only be "ancillary to or part of" the agreement at the time the
agreement was made. Accordingly, a unilateral contract formed when the
employer performs a promise that was illusory when made can satisfy the
requirements of the Act.


Sheshunoff, 209 S.W.3d at 651.

 The Agreement executed by Shoreline and McGaughey is similar in all material
aspects to the contract considered in Sheshunoff. See id. As in Sheshunoff, the
employment relationship here was at-will, and the employee promised not to disclose the
employer's confidential information. See id. McGaughey's promise not to disclose
Shoreline's confidential information, though not enforceable when made, constituted an
offer for a unilateral contract which Shoreline had the option to accept. Shoreline accepted
McGaughey's offer by performing--that is, by supplying McGaughey with confidential
information--and so a unilateral contract was formed under which McGaughey became
bound by his promise not to disclose that information. See Light, 883 S.W.2d at 645 n.6. 
Under Sheshunoff, such a unilateral contract constitutes an "otherwise enforceable
agreement" sufficient to support an accompanying non-compete covenant. See
Sheshunoff, 209 S.W.3d at 651; Tex. Bus. & Com. Code Ann. § 15.50(a).

 McGaughey denies that he was given confidential information during the course of
his employment, and claims that his obligation not to disclose such information was
therefore never triggered. We find this claim to be without merit. Rian Grisemer, president
of Shoreline, testified at the temporary injunction hearing that "[i]mmediately upon
employment, [McGaughey] was provided access to all of our files and all information
regarding our accounts, pricing, and customer needs, and references, all data we have in
our office." Grisemer further testified that:

 Over the last . . . 16 years, we have accumulated notes that relate to
producers that we deal with specifically, accounts that Mr. McGaughey
managed in our office. We call these working files. We have an ACT
database where we enter specific information about conversations we have
with producers. We have spreadsheets where . . . McGaughey would review
his commissions earned off of each of these accounts showing exact dollar
margins off of each and every account that he managed for the company.
We had producer files that contained all of the contract specifics and the
contracts themselves. We had market pricing which Mr. McGaughey played
a role in, too, as far as selling gas to our markets and at what price that gas
was. He not only bought gas, but he also marketed gas on some of these
accounts. So, he had access to--and had to use to perform his job[--]all of
this information.


 McGaughey is correct in his assertion that much of the information that he was
provided was publicly available. For example, the names and addresses of natural gas
producers is a matter of public record in Texas. However, the evidence adduced at the
temporary injunction hearing established that McGaughey was provided with margin and
pricing information, as well as notes compiled by Shoreline's employees and supplier
histories. None of this information is publicly available, and the dissemination of any of this
information would have damaged Shoreline's business. (3) Using the terminology of Light
and Sheshunoff, Shoreline accepted McGaughey's offer to not disclose confidential
information by providing McGaughey with access to these pieces of information. See
Sheshunoff, 209 S.W.3d at 651.

 We find, based on the evidence adduced at the temporary injunction hearing, that
there was an "otherwise enforceable agreement" as required by section 15.50(a). See
Tex. Bus. & Com. Code Ann. § 15.50(a). That the "otherwise enforceable agreement" did
not become enforceable until some time after the Agreement was executed is immaterial. 
See Sheshunoff, 209 S.W.3d at 651. Our attention next turns to whether the non-compete
covenant was "ancillary to or part of" the "otherwise enforceable agreement."

ii. "Ancillary To Or Part Of"

 In order for a non-compete covenant to be "ancillary to or part of" the otherwise
enforceable agreement, two conditions must be met: (1) the consideration given by the
employer in the otherwise enforceable agreement must give rise to the employer's interest
in restraining the employee from competing; and (2) the covenant must be designed to
enforce the employee's consideration or return promise in the otherwise enforceable
agreement. Sheshunoff, 209 S.W.3d at 648-49; Light, 883 S.W.2d at 647. To satisfy this
test, the "otherwise enforceable agreement" must give rise to an "interest worthy of
protection" by a covenant not to compete. Sheshunoff, 209 S.W.3d at 648-49. Examples
of such legitimate, protectable interests include business goodwill, trade secrets, and other
confidential or proprietary information. Id.

 In Light, the court identified three promises that were not illusory and therefore were
capable of serving as consideration for an "otherwise enforceable agreement." Those
promises were: (1) the employer's promise to provide "initial . . . specialized training" to the
employee; (4) (2) the employee's promise to provide 14 days notice to the employer to
terminate employment; and (3) the employee's promise to provide an inventory of all
employer-owned property upon termination. 883 S.W.2d at 645-46. Nevertheless, the
court ruled that the non-compete covenant that accompanied these promises was
unenforceable because "[w]hile [the employer's] consideration (the promise to train) might
involve confidential or proprietary information, the covenant not to compete is not designed
to enforce any of [the employee's] return promises in the otherwise enforceable
agreement." Id. at 647. As such, the covenant was not "ancillary to or part of" an
otherwise enforceable agreement under the two-prong test and so was unenforceable
under the Act. See Tex. Bus. & Com. Code Ann. § 15.50(a). 

 On the other hand, the non-compete covenant in Sheshunoff was found to be
enforceable. 209 S.W.3d at 657. That is because, unlike in Light, the employee in
Sheshunoff made a promise not to disclose the company's confidential information. Id. at
649. Although that promise was unenforceable when the agreement was signed, it
became enforceable as soon as the employer provided confidential information to the
employee, and therefore became the "otherwise enforceable agreement" as required under
the statute. See Tex. Bus. & Com. Code Ann. § 15.50(a). Moreover, this newly
enforceable agreement gave rise to an "interest worthy of protection" by a non-compete
covenant because it protected "confidential or proprietary information." Sheshunoff, 209
S.W.3d at 657; Light, 883 S.W.2d at 647; see DeSantis v. Wackenhut Corp., 793 S.W.2d
670, 682 (Tex. 1990) (stating that confidential information is an example of an "interest
worthy of protection" by a covenant not to compete).

 In the instant case, McGaughey, like the employer in Sheshunoff, made an express
promise not to disclose his employer's confidential information. 209 S.W.3d at 647. The
Agreement's non-disclosure provisions became enforceable immediately upon the
provision of confidential information by Shoreline to McGaughey, and this "otherwise
enforceable agreement" directly gave rise to an "interest worthy of protection" by the non-compete covenant. As such, the two-prong test elucidated in Light and Sheshunoff is
satisfied. See Sheshunoff, 209 S.W.3d at 649; Light, 883 S.W.2d at 647. (5)

 McGaughey argues that his Agreement is distinguishable from the employment
contract considered in Sheshunoff in that the latter contained a provision requiring the
employer to give the employee notice of termination (unless the termination stemmed from
employee misconduct) or to pay a specified fee. 209 S.W.3d at 646. However, this
difference is immaterial to our analysis. A covenant not to compete is not designed to
enforce a notice provision. Id. at 650; Light, 883 S.W.2d at 647 n.15. As such, the notice
provision in Sheshunoff could not support a non-compete covenant under the second
prong of the test. (6)

 We conclude, based on the evidence adduced at the temporary injunction hearing,
that the non-compete covenant was "ancillary to or part of an otherwise enforceable
agreement" as required by the Act. See Tex. Bus. & Com. Code Ann. § 15.50(a). 
Shoreline therefore established a probable right to relief on the merits with respect to the
non-compete covenant. See Butnaru, 84 S.W.3d at 204.

2. Enforceability of the Non-Solicitation Agreement

 The non-solicitation provisions of the Agreement stated as follows:

 8. Non solicitation of Accounts. I covenant and agree that during my
employment with the Company and for a period of three (3) years following
the date that, for any reason, I ceased to be employed by the Company
anywhere within the Area, I shall not, except as specifically authorized by the
Company in writing, any where [sic] within the Area, call on, contact or solicit,
directly or indirectly, any Account or prospective Account of the Company
with whom I have had Substantial Contact during my last twelve (12) months
of employment with the Company, for the purpose of buying, selling,
developing, marketing or promoting natural gas or related or derived
hydrocarbons or hydrocarbon by-products.


 9. Non solicitation of Employees. I covenant and agree that during
the course of my employment with the Company and for a period of one (1)
year immediately thereafter, I will not except as specifically authorized by the
Company in writing, call upon, solicit, recruit, or assist others in recruiting or
solicitation, any officer, employee, consultant or agent of the Company to
leave the employ of, or terminate their association with, the Company for any
reason.


 The Act does not, on its face, apply to non-solicitation agreements. See Tex. Bus.
& Com. Code Ann. §§ 15.50-.52. Shoreline urges us to infer from this that non-solicitation
clauses should be treated differently than non-compete covenants, citing Rugen v.
Interactive Business Systems, Inc., 864 S.W.2d 548 (Tex. App.-Dallas 1993, no writ), to
support its argument. In Rugen, the trial court found a non-compete agreement to be
unenforceable, yet it nevertheless granted a temporary injunction enjoining the employee
from soliciting or transacting business with the employer's customers because it found that
the employer's confidential information was entitled to protection. Id. at 550. The Dallas
Court of Appeals affirmed the judgment, finding that the trial court did not abuse its
discretion in ordering the temporary injunction despite finding the non-compete covenant
to be unenforceable. Id. at 553. Despite Shoreline's claims, however, the Rugen court did
not treat a non-solicitation clause differently from a non-compete covenant. In fact, the
parties in Rugen did not enter into a separate non-solicitation agreement; the only
contractual provision at issue was a non-compete covenant. Id. at 550. Shoreline's claim
that non-solicitation agreements should be treated differently from non-compete covenants
is not persuasive.

 Instead, non-solicitation agreements are subject to the same analysis as covenants
not to compete. See Miller Paper Co. v. Roberts Paper Co., 901 S.W.2d 593, 600 (Tex.
App.-Amarillo 1995, no writ) (stating that "other than the moniker assigned it, nothing truly
differentiates the [non-solicitation] promise at bar from a covenant not to compete"). The
purpose and effect of a non-solicitation agreement parallel those inherent in a non-compete covenant. Id. at 599. Both contain geographic and durational parameters, and
both effectively restrict competition. Id. at 599-600; see Tex. Bus. & Com. Code Ann. §
15.05(a). A non-solicitation agreement is sufficiently analogous to a covenant not to
compete such that the provisions of the Act must apply fully to such agreements. See Tex.
Bus. & Com. Code Ann. § 15.50(a).

 Therefore, in accordance with our analysis above with respect to the non-compete
covenant, we conclude that Shoreline established a probable right to relief with respect to
the non-solicitation agreement. See Butnaru, 84 S.W.3d at 204.

3. Enforceability of the Non-Disclosure Agreement

 The non-disclosure provisions of the Agreement stated as follows:

 4. Nondisclosure or Use of Trade Secrets. During the course of my
employment with the Company and for so long thereafter as the pertinent
information or documentation remains trade secrets of the Company, I will
not, directly or indirectly, use, disclose or disseminate to any other person,
organization or entity, or otherwise employ, any trade secrets of the
Company (whether or not such trade secrets are in written or tangible form),
except as specifically authorized in writing by the Company.


 5. Nondisclosure or Use of Confidential Information. During the
course of my employment with the Company and thereafter, I will not, except
as specifically authorized by the Company in writing, directly or indirectly, (i)
use for my own gain, or (ii) disclose or disseminate to any other person,
organization or entity, or otherwise employ, any Confidential Information,
unless such Confidential Information is required to be produced by myself in
response to a valid order, summons, or subpoena issued by a court or
administrative agency of competent jurisdiction. In the event I receive any
order, summons, or subpoena issued by a court or administrative agency to
produce Confidential Information, I will promptly notify the Company of such
subpoena, summons or order to provide the Company the opportunity to
protect its interests in such Confidential Information.


 Non-disclosure agreements are different than non-compete covenants. Zep Mfg.
Co. v. Harthcock, 824 S.W.2d 654, 663 (Tex. App.-Dallas 1992, no writ) (affirming the trial
court's summary judgment enforcing a non-disclosure clause despite being accompanied
by an unenforceable non-compete covenant); see also CRC-Evans Pipeline Int'l, Inc. v.
Myers, 927 S.W.2d 259, 265 (Tex. App.-Houston [1st Dist.] 1996, no writ) (affirming the
trial court's denial of temporary injunction enforcing non-disclosure agreement, despite the
fact that such agreements do not restrain trade, because trial court could have reasonably
found that former employees did not learn any trade secrets during the course of their
employment). A non-disclosure agreement may be enforceable even if a covenant not to
compete is not. Tom James, 109 S.W.3d at 888; CRC-Evans, 927 S.W.2d at 265. That
is because, while non-compete covenants are considered restraints of trade, non-disclosure agreements are not. CRC-Evans, 927 S.W.2d at 265; Zep, 824 S.W.2d at 663. 
Non-disclosure agreements do not necessarily restrict a former employee's ability to
compete with the former employer, nor do they prohibit the former employee from using,
in competition with the former employer, the general knowledge, skill, and experience
acquired in former employer. Zep, 824 S.W.2d at 663. Rather, such agreements prevent
only the disclosure of trade secrets and confidential information acquired by the former
employee. Id.

 McGaughey did not assert any defense to the enforceability of the non-disclosure
agreements other than that they are impermissible restraints of trade under the Act. 
However, the non-disclosure agreement at issue here is not a "restraint of trade" and so
it does not come under the rubric of the Act. See CRC-Evans, 927 S.W.2d at 265; Zep,
824 S.W.2d at 663; Tex. Bus. & Com. Code Ann. § 15.50(a). We therefore conclude that
Shoreline established a probable right to relief with respect to the non-disclosure
agreement. (7)

C. Probable Irreparable Injury

 Having found that Shoreline established a probable right to recovery upon a final
trial on the merits with respect to all of the contractual provisions at issue, we turn our
attention finally to whether Shoreline satisfied the final element required for the issuance
of a temporary injunction; namely, whether Shoreline faced probable imminent and
irreparable injury if the injunction were not issued. See Butnaru, 84 S.W.3d at 204.

 An irreparable injury exists if the party injured cannot sufficiently be compensated
in damages or the amount of damages is immeasurable by pecuniary standards. Id. (citing
Canteen Corp. v. Republic of Tex. Props., Inc., 773 S.W.2d 398, 401 (Tex. App.-Dallas
1989, no writ)). The contract provisions at issue here "will not be enforced by an injunction
where the party seeking the injunction has failed to show that without injunctive relief he
will suffer irreparable injury for which he has no adequate legal remedy." Reach Group,
L.L.C. v. Angelina Group, 173 S.W.3d 834, 837-38 (Tex. App.-Houston [14th Dist.] 2005,
no pet.). However, the purpose of injunctive relief is to halt wrongful acts that are
threatened or in the course of accomplishment, rather than to grant relief against past
actionable wrongs or to prevent commission of wrongs not imminently threatened. See
Tex. Health Care Info. Council v. Seton Health Plan, Inc., 94 S.W.3d 841, 853 (Tex.
App.-Austin 2002, pet. denied). Although an injunction is a preventive device, injunctive
relief is improper when the party seeking the injunction has mere fear or apprehension of
the possibility of injury. Harbor Perfusion, Inc. v. Floyd, 45 S.W.3d 713, 716 (Tex.
App.-Corpus Christi 2001, no pet.).

 Shoreline noted at the temporary injunction hearing that the Agreement signed by
McGaughey included a section entitled "Remedies" which specifically stated that monetary
damages would be insufficient to compensate for any breach or violation of the
Agreement's provisions. (8) However, Shoreline has pointed us to no Texas case holding
that an agreement such as this establishes, for injunction purposes, that remedies at law
will be inadequate or that irreparable injury will necessarily be suffered. See Wright, 137
S.W.3d at 294.

 Moreover, as discussed above, Shoreline produced no evidence that McGaughey
had actually breached or violated any covenant or undertaking contained in the Agreement,
or even that McGaughey had threatened to breach or violate any such undertakings. At
the temporary injunction hearing, Grisemer testified as follows:

Q. Now, if the Court in this particular hearing were not to enforce the
provisions, the Non-Compete provisions as we've asked the Court to
enforce in paragraph seven and paragraph eight, and Chuck
McGaughey would be allowed to violate the provisions of this
agreement, in your opinion, would Shoreline Gas be irreputably [sic]
injured?


A. Yes, we would.


Q. And how is that in your opinion?


A. Well, I suppose he would be free to violate the entire agreement and
take all the business away from us that we spent so many years to
develop by under cutting [sic] our pricing and taking advantage of the
relationships that have been developed over the years. And I think
there would be some jobs lost.


Q. If Mr. McGaughey were in fact to violate this agreement and solicit
customers, or compete with Shoreline Gas with respect to the
customers that it had significant responsibility over, would it create a
problem in terms of determining exactly what damage Shoreline Gas
would suffer? Would there be any kind of practicable problems
associated with that?


A. There would. We'd have to prove the damages and then recover the
damages. The concern would be that Mr. McGaughey would not be
capable of financially paying back the damages.


 On cross-examination, Grisemer also testified as follows:

Q. When did Mr. McGaughey tell you he was going to go set up in
competition with you?


A. He did not tell me that.


Q. Okay. When did he tell you he was going to disclose your secrets to
somebody outside the Company?


A. He did not tell me that.


 The record, including this testimony, reflects only that Shoreline had a fear or
apprehension of the possibility of injury. See Harbor Perfusion, 45 S.W.3d at 716. This
is insufficient to establish a probability of irreparable injury as would support a temporary
injunction. Id. Because we must uphold the trial court's judgment on any grounds
supported by the record, see Davis, 571 S.W.2d at 862, we conclude that the trial court did
not abuse its discretion in denying Shoreline's request for temporary injunction with respect
to any of the three contractual provisions at issue. Shoreline's first, second, and third

issues are therefore overruled. (9)

IV. Conclusion

 Viewing the evidence in the light most favorable to the trial court's order, we
conclude that the trial court did not abuse its discretion in denying Shoreline's application
for a temporary injunction. See Gonzalez, 631 S.W.2d at 195. Accordingly, we affirm the
judgment of the trial court.

 


 __________________________

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 17th day of April, 2008.
1. McGaughey claims that when he told Rian Grisemer, president of Shoreline, that he would not sign
the Agreement, Grisemer told him "if things don't work out you can go back to work for a larger company. 
That won't be a problem." Shoreline disputes this claim.
2. An applicant for permanent injunctive relief must establish the following four elements: (1) the
existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and
(4) the absence of an adequate remedy at law. Montfort v. Trek Res., Inc., 198 S.W.3d 344, 350 (Tex.
App.-Eastland 2006, no pet.).
3. We note that, although this information provided to McGaughey was considered "confidential
information" and "trade secrets" under the definitions provided in the Agreement, this does not mean that they
were in fact confidential or trade secrets. In actuality, the definitions provided in the Agreement were overly
broad and included pieces of information that are publicly available, such as the names and addresses of gas
producers.

 

 It is nevertheless apparent from our review of the record that much of the information provided by
Shoreline to McGaughey in the course of his employment--such as certain pricing information, profit margin
information and supplier history--was in fact confidential and met the definition of trade secret as provided
by the Texas Supreme Court. See In re Bass, 113 S.W.3d 735, 739 (Tex. 2003) (orig. proceeding) (defining
a trade secret as "any formula, pattern or device or compilation of information which is used in one's business
and presents an opportunity to obtain an advantage over competitors, who do not know or use it."). Moreover,
this information did not lose its nature as trade secrets because Shoreline never instructed or approved of the
dissemination of such information. See CRC-Evans Pipeline Int'l, Inc. v. Myers, 927 S.W.2d 259, 266 (Tex.
App.-Houston [1st Dist.] 1996, no writ) (stating that "[i]nformation otherwise qualifying as a trade secret may
lose its 'secret' status when disclosed to others with the employer's blessing").
4. The employer obligation to provide initial training in Light did not depend on whether the employee
was still employed. See Light v. Centel Cellular Co. of Tex., 883 S.W.2d 642, 646 (Tex. 1994) ("Even if [the
employee] had resigned or been fired after this agreement was executed, [the employer] would still have been
required to provide the initial training.").
5. McGaughey notes that, unlike in the present case, the Sheshunoff employment contract required
the employer to provide to the employee with "access to certain confidential and proprietary information and
materials belonging to Employer. . . ." Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209 S.W.3d 644, 647
(Tex. 2006). This promise was illusory, however, because the employer could avoid performance simply by
terminating employment. Further, this promise was not of the type that could be considered an offer for a
unilateral contract that could be accepted by the performance of the promisee. Therefore, it could not have
formed the basis of an "otherwise enforceable agreement" capable of sustaining a non-compete covenant. 
See id. at 650.
6. "[Employer's] non-illusory promise to give at least two week's notice before terminating [employee]
does not give rise to its interest in restraining [employee] from competing." Sheshunoff, 209 S.W.3d at 650.
7. We note that the definition of "Confidential Information" contained in the Agreement expressly
included "trade secrets" and also included the following statement: "I acknowledge and agree that the
Confidential Information of the Company described above constitutes and comprises trade secrets of the
Company and will at all times be treated by myself as such." As discussed above, however, simply because
the Agreement defined a certain piece of information as "confidential" or a "trade secret" does not mean it was
in fact confidential or a trade secret. Still, McGaughey asserts no defense, on this appeal, to the enforceability
of the non-disclosure paragraphs other than claiming that they are restraints of trade barred by the Covenants
Not to Compete Act. Therefore, Shoreline established a probable right to relief with respect to the
enforcement of these paragraphs.
8. That section stated as follows:


 I recognize and agree that the ascertainment of damages in the event of by breach
[sic] or violation of any covenant or undertaking contained in this Agreement would be
difficult, if not impossible, and further that the various rights and duties created hereunder are
extraordinary and unique so that the Company will suffer irreparable injury that cannot
adequately be compensated by monetary damages in the event of my breach or violation of
any covenant or undertaking contained in this Agreement.
9. We need not reach Shoreline's fourth issue challenging the trial court's failure to reform the non-compete, non-solicitation, and non-disclosure provisions of the Agreement under section 15.51(c) of the
business and commerce code. See Tex. Bus. & Com. Code Ann. § 15.51(c). That is because, as discussed
above, we review the trial court's statement that the provisions at issue are unenforceable only insofar as it
affects one or more of the elements required for a temporary injunction. See Butnaru v. Ford Motor Co., 84
S.W.3d 198, 204 (Tex. 2002); Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 883 (Tex. App.-Dallas
2003, no pet.); see also Tex. R. App. P. 47.1. Whether the trial court erred in failing to reform those provisions
does not affect our analysis of whether Shoreline established a cause of action, a probable right to relief, or
probable imminent and irreparable injury. Butnaru, 84 S.W.3d at 204.