In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00951-CV




HARRIS COUNTY MEDICAL EXAMINER LUIS ARTURO SANCHEZ,
M.D., Appellant
  
V.
  
AFSANEH SAGHIAN, Appellee



     
On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2007-63543




MEMORANDUM OPINION

          The Harris County Medical Examiner, Luis Sanchez, M.D., brings this appeal
complaining of the ancillary court’s orders preventing the autopsy of a Harris County
resident, Yahya Saghian. We reverse the ancillary court’s orders and remand this
case for further proceedings. 
Background
Sometime in the late evening of Sunday, October 14, 2007, or in the early
morning of Monday, October 15, 2007, Yahya Saghian died at his home in Harris
County, at the age of 54. For at least the two years prior to his death, Mr. Saghian
suffered from mental illness and depression, including suicidal thoughts. During the
time before his death, Mr. Saghian, together with his wife, sought counseling from
Rabbi Yossi Grossman, and he was treated by a psychiatrist, Dr. Raichman. On the
Saturday before his death, Mr. Saghian sought counseling from Rabbi Grossman. 
According to Rabbi Grossman, Mr. Saghian stated “very explicitly to me he was
going to take his own life.” 
Mr. Saghian was last seen alive at approximately 10:00 p.m. on October 14,
2007. On Monday, October 15, 2007, Rabbi Grossman received a telephone call
from Mr. Saghian’s wife and daughter, asking him to come to the Saghian home. 
Before leaving his own home, Rabbi Grossman told his wife to call an ambulance to
the Saghian home. The ambulance and Rabbi Grossman arrived at the Saghian home
at the same time. Rabbi Grossman and emergency personnel entered the Saghian
home together. Rabbi Grossman observed Mr. Saghian, clothed and lying on his bed,
with two empty pill bottles laying on the floor. After emergency personnel
pronounced Mr. Saghian dead, Mrs. Saghian showed them another empty pill bottle
nearby. Rabbi Grossman testified that he had an opportunity to see Mr. Saghian’s
throat, and that he did not observe anything unusual. In fact, Rabbi Grossman
testified that Mr. Saghian looked “at peace.” 
 Rabbi Grossman testified that, in his mind, he was certain that Mr. Saghian
committed suicide. Rabbi Grossman testified that he was aware that someone had
seen Mr. Saghian “take some pills,” although he did not specify as to when. There
was no evidence of any violence at the Saghian home. A crime scene investigation
was performed, involving personnel from the Houston Police Department and the
Office of the Harris County Medical Examiner (the “Medical Examiner”). The
Medical Examiner obtained copies of Mr. Saghian’s medical records, including his
treatment by Dr. Raichman. These records confirmed Mr. Saghian’s history of
depression and suicidal ideation, as well as other psychiatric illnesses, and pulmonary
disease and chest pains. Dr. Raichman’s opinion, like Rabbi Grossman’s, was that
Mr. Saghian’s death was a suicide. The police report also indicated that Mr.
Saghian’s death was an apparent suicide. The Medical Examiner took possession of
Mr. Saghian’s body for autopsy. 
At 8:23 a.m. on October 16, 2007, Afsaneh Saghian filed an “Original Petition
and Verified Application for a Temporary Restraining Order and Temporary
Injunction,” seeking to enjoin the Medical Examiner’s scheduled autopsy of Mr.
Saghian. The petition contended that an autopsy would violate the canons of
Orthodox Judaism, providing an affidavit from Rabbi Robert Block supporting that
claim. Citing the Texas Civil Practice & Remedies Code, the petition argued that the
scheduled autopsy violated the prohibition on government actions that substantially
burden a person’s free exercise of religion without a showing that the burden is both
in furtherance of a compelling government interest and is the least restrictive means
of furthering that compelling government interest. 
Two hours after the petition was filed, the assigned ancillary trial court judge
conducted an ex parte hearing and signed an order, titled “Temporary Restraining
Order,” preventing the autopsy of Mr. Saghian. The hearing on the temporary
restraining order occurred without Dr. Sanchez or his counsel present, and no
reporter’s record of that hearing has been provided. The order, however, recites that
the Court was advised that notice of the petition’s filing had been provided to Dr.
Sanchez. The order finds that “conducting an autopsy is prohibited under Orthodox
Jewish law . . . [and] that Plaintiff will suffer irreparable harm if the autopsy was to
go forward.” Accordingly, the order enjoined the autopsy and ordered the release of
Mr. Saghian’s body to Afsaneh Saghian, or a funeral director acting under her
instructions, for burial in accordance with Jewish law. The order further stated that 
Dr. Sanchez and/or [the] Harris County Medical Examiner’s office may
appear before the Court today, on one hour’s notice to plaintiff’s
counsel, and seek to move the Court to modify this Order, upon making
the showing required by Tex. Civ. Prac. & Rem. Code s. 110.003(b) [the
Texas Religious Freedom Restoration Act], or persuad[ing] the Court
that s. 110 does not apply in this cause. 

Later that day, Dr. Sanchez appeared with counsel at a hearing to challenge the
ancillary court’s order via an oral motion to modify or vacate the order. After
hearing the arguments of counsel, as well as testimony from Dr. Sanchez, Rabbi
Robert Walker and Rabbi Grossman, the ancillary judge declined to amend or
withdraw the temporary restraining order. On October 17, the ancillary judge signed
an order denying the motion to modify or vacate. 
On November 2, 2007, Dr. Sanchez filed a notice of appeal. Shortly thereafter,
he also filed a request for findings of fact and conclusions of law. On November 16,
2007, Dr. Sanchez filed a motion to vacate, modify, correct or reform the judgment,
asking the 133rd Judicial District Court to vacate the ancillary court’s orders and to
order the disinterment of Mr. Saghian’s body so that an autopsy could be performed. 
That same day, Dr. Sanchez alternately moved for a new trial, based upon what he
claimed was “newly discovered evidence”—affidavits from the Harris County District
Attorney and personnel from the Office of the Harris County Chief Medical
Examiner. The presiding judge of the 133rd Judicial District Court held a hearing
and concluded that, given Dr. Sanchez’s previously filed notice of appeal, he was
without jurisdiction to decide the motions to vacate and for new trial.


 
On January 3, 2008, the ancillary court issued its Findings of Fact and
Conclusions of Law. In those findings, the trial court concluded that the Medical
Examiner was required to perform an inquest in cases of suicide, and that, when the
Medical Examiner concluded that an autopsy is necessary to determine or confirm the
cause of death, “then the [Medical Examiner] must perform the autopsy . . . .” The
court further concluded that the Medical Examiner has “discretion to determine
whether a full and complete autopsy was necessary to determine the cause of [Yahya
Saghian’s] death” and “[t]here is no evidence to suggest that Dr. Sanchez did not
sincerely and appropriately exercise his discretion in his determinations in this case.” 
 However, the trial court then concluded that, although the autopsy was within Dr.
Sanchez’s discretion, it would “substantially burden[ ] the free exercise of religion
of the decedent, Yahya Saghian, his wife, Afsaneh Saghian and the members of the
Saghian family, to be buried, or to bury their loved one, in the manner consistent with
Orthodox Jewish law.” Accordingly, the trial court concluded that “the burden falls
to the defendant to demonstrate that the challenged action is the least restrictive
means to achieve a compelling governmental interest.” The court further concluded
that 
in this case - in which there is no evidence and no suspicion of foul play
or a violent death, and no existing reason to believe that this was
anything but suicide - the determination to a reasonable degree of
medical certainty the exact cause of Yahya Saghian’s death does not
constitute a compelling governmental interest. In short, ruling out
homicide in this case cannot be a compelling interest, when there is no
reason to rule it in. 
 
. . . [Further], even if the determination of the cause of Yahya Saghian’s
death to a reasonable degree of medical certainty does constitute a
compelling governmental interest, the performance of the challenged
practice (the autopsy) is not the least restrictive means of achieving that
interest. It is undisputed that disinterment is available to the [Medical
Examiner] and is authorized by statute. In the event that further
investigation yields evidence to suggest foul play or other criminal
conduct resulting in death, then disinterment followed by either a limited
or complete autopsy (in the [Medical Examiner]’s discretion) would
constitute a less restrictive means to further the governmental interest at
issue. 

(Emphasis in original.)
ANALYSIS
On appeal, Dr. Sanchez presents several issues: (1) whether the ancillary
court’s orders


 are void and the court lacked subject matter jurisdiction because
Afsaneh Saghian failed to show that she had standing to challenge the scheduled
autopsy of Mr. Saghian; (2) whether the Harris County District Attorney was a
necessary and indispensable party to the lawsuit and Afsaneh Saghian’s failure to join
him deprived the ancillary court of jurisdiction; (3) whether the ancillary court erred
in its “construction, application and harmonization” of Chapter 110 of the Texas Civil
Practice & Remedies Code and Article 49.25 of the Texas Code of Criminal
Procedure and misapplied the law to the evidence adduced; and (4) whether Dr.
Sanchez’s due process right to a fair trial was violated. We address the first, second
and third issues on appeal. 
A. Jurisdiction 
          As a threshold issue, we must address whether we properly have jurisdiction
over this appeal. Materials Evolution Dev. USA, Inc. v. Jablonowski, 949 S.W.2d 31,
33 (Tex. App.—San Antonio 1997, no pet.); McClennahan v. First Gibraltar Bank
F.S.B., 791 S.W.2d 607, 608 (Tex. App.—Dallas 1990, no writ). Generally, appellate
jurisdiction exists only in cases in which a final judgment has been rendered that
disposes of all issues and parties in the case. Jack B. Anglin Co. v. Tipps, 842 S.W.2d
266, 268 (Tex. 1992). It is fundamental error for an appellate court to assume
jurisdiction over an interlocutory appeal when it is not expressly authorized by
statute. New York Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 678–79 (Tex.
1990).
          1. The October 16, 2007 “Temporary Restraining Order”
          A temporary restraining order is generally not appealable. In re Tex. Natural
Res. Conservation Comm’n, 85 S.W.3d 201, 205 (Tex. 2002) (orig. proceeding)
(citing Del Valle Indep. Sch. Dist. v. Lopez, 845 S.W.2d 808, 809 (Tex. 1992)). A
temporary injunction, on the other hand, is an appealable interlocutory order. Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(4) (Vernon 2008). “The fact that the order
is denominated as a temporary restraining order does not control whether the order
is appealable.” In re Tex. Natural Res. Conservation Comm’n, 85 S.W.3d at 205. 
Whether an order is a non-appealable temporary restraining order or an appealable
temporary injunction depends on the order’s characteristics and function, not its title. 
Id. (citing Qwest Commc’ns. Corp. v. AT & T Corp., 24 S.W.3d 334, 336 (Tex. 2000);
Del Valle, 845 S.W.2d at 809). An order that does more than protect the status quo
for the allowable period under Rule 680 is functionally an appealable temporary
injunction. See, e.g., Global Natural Res. v. Bear, Stearns & Co., 642 S.W.2d 852,
854 (Tex. App.—Dallas 1982, no writ); Plant Process Equip., Inc. v. Harris, 579
S.W.2d 53, 54 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ). 
          In this case, although it is nominally a “temporary restraining order,” the
ancillary court’s October 16, 2007 order is, in fact, an appealable temporary
injunction because it irrevocably changed the status quo between the parties. The
order not only prevented the autopsy of Mr. Saghian, whose body was in the custody
of the Medical Examiner at that time, but also ordered the release of Mr. Saghian’s
body to Afsaneh Saghian for burial. Accordingly, we have jurisdiction over that
portion of Dr. Sanchez’s appeal complaining of the ancillary court’s October 16, 2007
order. 
2. The October 16, 2007 Statements of the Ancillary Court and the
October 17, 2007 Written Order Denying the Motion to Modify or Vacate
the TRO

          Hours after entering the October 16, 2007 order, the trial court held a hearing
on Dr. Sanchez’s motion to modify the order. After receiving evidence, the ancillary
court stated on the record that “. . . I will rule that the government proposed act does
substantially burden the family’s and the decedent’s free exercise of religion; no less
restrictive means of furthering – that a less restrictive means of furthering that
governmental interest is available. Therefore, I will deny the motion to modify or
vacate the order previously entered.” The next day, October 17, 2007, the ancillary
court signed a written order stating 
Upon consideration of the arguments and evidence presented at the
hearing, and the authorities cited by counsel for the parties, the Court is
of the opinion that the Motion to Modify or Vacate is not well-taken
and, for the reasons stated on the record at the conclusion of the hearing,
is hereby DENIED.

          Pursuant to section 51.014 of the Texas Civil Practice and Remedies Code, we
have jurisdiction to consider the interlocutory appeal of the court’s October 17, 2007
order denying Dr. Sanchez’s motion to dissolve or modify the October 16, 2007 order
only if that order “grants or overrules a motion to modify or dissolve a temporary
injunction.” Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (Vernon 2008). 
Since, as we hold above, the October 16, 2007 order is a temporary injunction, we
also have jurisdiction over that portion of Dr. Sanchez’s appeal complaining of the
ancillary court’s refusal to modify or vacate that order. 
B. Standing of Afsaneh Saghian

          Dr. Sanchez first complains that ancillary court’s orders are void and the court
lacked subject matter jurisdiction because Afsaneh Saghian failed to prove that she
had standing to challenge the scheduled autopsy of Mr. Saghian. The ancillary court’s
findings of fact specifically found that “Afsaneh Saghian is the spouse of Yahya
Saghian.” 
          “Standing consists of some interest peculiar to the person individually and not
as a member of the general public.” Billy B., Inc. v. Bd. of Trs. of Galveston Wharves,
717 S.W.2d 156, 158 (Tex. App.—Houston [1st Dist.] 1986, no writ) (citing Hunt v.
Bass, 664 S.W.2d 323, 324 (Tex. 1984)). More specifically, a person has standing
to sue if: (1) he has sustained, or is immediately in danger of sustaining, some direct
injury as a result of the wrongful act of which he complains; (2) he has a direct
relationship between the alleged injury and claim sought to be adjudicated; (3) he has
a personal stake in the controversy; (4) the challenged action has caused the plaintiff
some injury in fact, either economic, recreational, environmental, or otherwise; or (5)
he is an appropriate party to assert the public’s interest in the matter, as well as his
own interest. Id. (citing Hous. Authority v. State ex rel. Velasquez, 539 S.W.2d 911,
913–14 (Tex. Civ. App.—Corpus Christi 1976, writ ref’d n.r.e.)). Standing is a
component of subject matter jurisdiction. Douglas v. Delp, 987 S.W.2d 879, 882
(Tex.1999). 
          We note that the Medical Examiner never raised the issue of Afsaneh Saghian’s
standing below. Nonetheless, standing cannot be waived and may be raised for the
first time on appeal by the parties or the court. West Orange-Cove Consol. Indep.
Sch. Dist. v. Alanis, 107 S.W.3d 558, 587 (Tex. 2003). In our review of standing, we
take the factual allegations in the petition as true and construe them in favor of the
pleader. Juarez v. Texas Ass’n of Sporting Officials, El Paso Chapter, 172 S.W.3d
274, 278 (Tex. App.—El Paso 2005, no pet.) (citing Texas Ass’n of Bus. v. Texas Air
Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)). In addition to the pleadings, we may
also consider relevant evidence to resolve the jurisdictional issues raised. Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000). We review the entire
record to determine whether any evidence supports standing. Tex. Ass’n of Bus., 852
S.W.2d at 446.
          Reviewing the entire record, even though she never actually alleged that she
was the spouse or family member of Yahya Saghian and none of the testifying
witnesses described her relationship as such, we find that there is some evidence in
the record that Afsaneh Saghian had standing to seek to enjoin the autopsy of Yahya
Saghian. The record on appeal includes her counsel’s affidavit, attached to which is
an October 15, 2007 letter to Dr. Sanchez, stating that he is counsel to “Afsaneh
Saghian, the widow of the above-referenced decedent [Yahya Saghian]” and
informing Dr. Sanchez of his intention to file a petition for injunctive relief to prevent
the autopsy of Mr. Saghian. We overrule Dr. Sanchez’s first point of error. 
C. Failure to Join the Harris County District Attorney
          Dr. Sanchez complains that Afsaneh Saghian failed to join a necessary and
indispensable party to the lawsuit, the Harris County District Attorney, and this
failure deprived the ancillary court of jurisdiction. Dr. Sanchez bases this argument
on Mr. Rosenthal’s affidavit, submitted to the trial judge of the 133rd Judicial District
Court in support of Dr. Sanchez’s motion for new trial, stating that he requested Mr.
Sanchez perform an autopsy on Mr. Saghian. The affidavit does not contain the date
of Mr. Rosenthal’s request to Dr. Sanchez. According to Dr. Sanchez, the Harris
County District Attorney is specifically authorized to request that the Harris County
Medical Examiner perform an autopsy and that, upon such request, “the autopsy shall
be immediately performed by the medical examiner or a duly authorized deputy.” 
Tex. Code Crim. Proc. Ann. art. 49.25 § 9(a)(Vernon 2006). According to Mr.
Rosenthal, the autopsy of Mr. Saghian is necessary for Mr. Rosenthal to determine
whether to refer Mr. Saghian’s death to a grand jury “for its examination of the
evidence and decision regarding whether probable cause exists to believe that a
criminal violation occurred in connection with Mr. Saghian’s death.” Dr. Sanchez
does not cite any caselaw on the doctrine of indispensable parties. The Texas
Supreme Court instructs us that “Under our present rule, it would be rare indeed if
there were a person whose presence was so indispensable in the sense that his absence
deprives the court of jurisdiction to adjudicate between the parties already joined.”
Cox v. Johnson, 638 S.W.2d 867, 868 (Tex. 1982) (citing Cooper v. Texas Gulf
Indus., Inc., 513 S.W.2d 200, 204 (Tex. 1974)).       
          To effectuate the well-settled principle that the courts are without jurisdiction
to render advisory opinions, a party with authority to enforce a particular statute must
be named in a suit to declare the statute unconstitutional. Gilmer Indep. Sch. Dist. v.
Dorfman, 156 S.W.3d 586, 588 (Tex. App.—Tyler 2003, no pet.) (citing Lone Starr
Multi Theatres, Inc. v. State, 922 S.W.2d 295, 297 (Tex. App.—Austin 1996, no
pet.)). A state official primarily responsible for enforcement of a statute must be
joined in any suit affecting the constitutionality of that statute. Id. (citing Motor
Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass’n Inc., 37 S.W.3d 538, 541 (Tex.
App.—El Paso 2001, pet. denied). Failure to add a necessary and indispensable party
to the constitutional challenge of a statute leaves the trial court without jurisdiction.
Id.
          The official responsible for carrying out the act at issue–the autopsy–is not the
Harris County District Attorney. Instead, the Code of Criminal Procedure squarely
lays that responsibility at the feet of “the medical examiner or a duly authorized
deputy.” Tex. Code Crim. Proc. Ann. art. 49.25 § 9(a) (Vernon 2006). 
Accordingly, we decline to add the Harris County District Attorney to the list of
indispensable parties to this lawsuit. We overrule Dr. Sanchez’s second point of
error. 
D.      May a trial court enjoin the acts of governmental officials such as the 
          Harris County Medical Examiner? 

           Among the many arguments asserted by the various amici in this case is the
contention that the Medical Examiner of Harris County is a judicial officer and that
it is manifestly improper for a district court to enjoin him from performing duties
which he deems–in a valid exercise of his discretion—to be necessary and required
of him by statute. We agree that the filing of a mandamus is normally the proper
procedure by which to contest the discretionary acts of an official such as the Medical
Examiner. If, however, those acts are unlawful, then an injunction may be
appropriate. 
          1.      The Medical Examiner is vested with discretion to determine
whether an autopsy should be performed. 

           The Texas Code of Criminal Procedure sets forth the duties and obligations
of the Medical Examiner, and vests the Medical Examiner with “all powers and duties
of justices of the peace in such county relating to the investigation of deaths and
inquests”—including the discretion to determine whether or not an autopsy is
necessary where death is by suicide or in other enumerated circumstances. Tex.
Code Crim. Proc. art. 49.25 (Vernon 2006). In such circumstances, the Code states
that the “medical examiner, or his duly authorized deputy, shall be authorized, and
it shall be his duty, to hold inquests with or without a jury within his county.” Id. §
6(a). In addition to seating a jury, the Medical Examiner’s power to hold inquests
includes administering oaths and taking affidavits. Id. § 6 (c).
          If, even after an inquest, the Medical Examiner should determine that an
autopsy of the deceased is necessary to ascertain the cause of death, or if the district
attorney requests one, then an autopsy “shall be immediately performed by the
medical examiner or a duly authorized deputy.” Id. § 9(a). Although the statute does
not use the word “discretion,” it is clear from the wording that, in the absence of a
request by the district attorney, the decision as to whether or not an autopsy is
necessary rests in the sole discretion of the Medical Examiner. Id.; see, e.g., Putthoff
v. Ancrum, 934 S.W.2d 164, 172 (Tex. App.—Fort Worth 1996, writ denied) (finding
that autopsies performed by a medical examiner pursuant to article 49.25 involve both
“governmental discretion” and “medical discretion”).
          2.     An injunction preventing the Medical Examiner from performing
an autopsy that he deems, in a valid exercise of his discretion, to be
required is improper unless the autopsy would be “unlawful.” 

          Where statute vests public officials with discretion in performing their duties,
it has long been the policy of Texas courts to refrain from interfering with a valid 
exercise of that discretion. See, e.g., Arberry v. Beavers, 6 Tex. 457 (1851) (noting
that mandamus “does not lie to instruct [public officers and courts of inferior
jurisdiction] as to the manner in which they shall discharge a duty which involves the
exercise of discretion or judgment”).   The exception is in cases where such discretion
has been abused, and a writ of mandamus may be proper in such instances. See, e.g.,
Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). In addition, when the acts of
a public official violate the law, and cause irreparable injury to a plaintiff, an
injunction may be proper. See, e.g., Dallas County v. Sweitzer, 881 S.W.2d 757, 769
(Tex. App.—Dallas 1994, writ denied) (holding, “[a] party can seek to restrain the
unlawful act of a public official when the act would cause irreparable injury”); see
also Tex. Civ. Prac. & Rem. Code Ann. § 110.005(a)(2) (Vernon 2005)
(enumerating remedies granted to successful litigants under the Texas Religious
Freedom Restoration Act, including injunctive relief). 
          Here, Mrs. Saghian did not seek a writ of mandamus and the trial court
specifically noted in its findings of fact and conclusions of law that “there is no
evidence to suggest that Dr. Sanchez did not sincerely and appropriately exercise his
discretion in his determinations in this case.” Because the Medical Examiner’s
determination of whether an autopsy must be performed is an exercise of discretion
vested in him by statute, and the trial court did not find that the Medical Examiner
abused his discretion, the trial court’s injunction against the Medical Examiner’s
autopsy of Mr. Saghian’s body is improper unless the autopsy would be unlawful. 
In its conclusions of law, the trial court held the autopsy would violate the Texas
Religious Freedom Restoration Act because it would “substantially burden[] the free
exercise of religion” of Yahya Saghian, Afsaneh Saghian and the members of the
Saghian family, and the government had not established the autopsy was the least
restrictive means of achieving a compelling government interest. 
E.    Did the trial court correctly conclude that the Medical Examiner’s autopsy
of Mr. Saghian would violate the Texas Religious Freedom Restoration
Act? 

          The decision to grant or deny a temporary injunction lies in the sound
discretion of the trial court, and the court’s ruling is subject to reversal only for a
clear abuse of discretion. TMC Worldwide, L.P. v. Gray, 178 S.W.3d 29, 36 (Tex.
App.—Houston [1st Dist.] 2005, no pet.) (citing Walling v. Metcalfe, 863 S.W.2d 56,
58 (Tex. 1993)). We must not substitute our judgment for the trial court’s judgment
unless the trial court’s action was so arbitrary that it exceeded the bounds of
reasonable discretion. Id. (citing Johnson v. Fourth Ct. App., 700 S.W.2d 916, 918
(Tex. 1985)). In reviewing an order granting or denying a temporary injunction, we
draw all legitimate inferences from the evidence in a manner most favorable to the
trial court’s judgment. Id. (citing CRC-Evans Pipeline Int’l v. Myers, 927 S.W.2d
259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ)). Abuse of discretion does
not exist if the trial court heard conflicting evidence and evidence appears in the
record that reasonably supports the trial court’s decision. Id. (citing Davis v. Huey,
571 S.W.2d 859, 862 (Tex. 1978); Myers, 927 S.W.2d at 262). However, a trial
court abuses its discretion when it misapplies the law to established facts or when the
evidence does not reasonably support its determinations regarding the existence of
a probable right of recovery or a probable injury. State v. SW. Bell Tel. Co., 526
S.W.2d 526 (Tex. 1975); Tom James, 109 S.W.3d at 883. We review de novo any
determinations on questions of law that the trial court made in support of the order. 
Tom James, 109 S.W.3d at 883.
          The Texas Religious Freedom Restoration Act (“TRFRA”) provides that “a
government agency may not substantially burden a person’s free exercise of religion”
unless “the government agency demonstrates that the application of the burden to the
person . . . is in furtherance of a compelling government interest; and . . . is the least
restrictive means of furthering that interest.” Tex. Civ. Prac. & Rem. Code Ann.
§ 110.003(a)-(b) (Vernon 2005). TRFRA defines “free exercise of religion” as an act
or refusal to act that is substantially motivated by sincere religious belief. Id.
§ 110.001(a). Under TRFRA, the plaintiff bears the initial burden of showing that the
government is substantially burdening his free exercise of religion.


 Balawajder v.
Tex. Dep’t of Crim. Justice, 217 S.W.3d 20, 26 (Tex. App.—Houston [1st Dist.]
2006, pet. denied). The government then must demonstrate that the burden is in
furtherance of a compelling governmental interest and that it is the least restrictive
means of furthering that interest. Tex. Civ. Prac. & Rem. Code Ann. § 110.003(b)
(Vernon 2005). We must keep in mind that this is a “case-by-case, fact-specific
inquiry.” Barr v. City of Sinton, No. 06-0074, – S.W.3d – , 2009 WL 1712798, *9 
(Tex. June 19, 2009). And, as the Barr court noted, there is “no cause to pretend that
the task . . . is an easy one.” Id. at *13. 
1. Is the autopsy of Mr. Saghian a “substantial burden” on the “free
exercise of religion” of Afsaneh or Yahya Saghian?

          The Texas Supreme Court has recently declined to state a bright-line rule for
determining when a person’s free exercise of religion has been “substantially
burdened.” Barr, 2009 WL 1712798 at *9. It did note with approval, however, the
Fifth Circuit’s holding that, under RLUIPA, “a government action or regulation
creates a ‘substantial burden’ on a religious exercise if it truly pressures the adherent
to significantly modify his religious behavior and significantly violate his religious
beliefs.” Id. (citing Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004)). “The
burden must be measured, of course, from the person’s perspective, not the
government’s.” Id. (emphasis added). In Barr, the court had “no hesitation” in
holding that a city zoning ordinance prohibiting a pastor from operating a “biblically
supported” halfway house for convicts was a “substantial burden” on the pastor’s free
exercise of religion. Id. at *10. 
          Under the holding in Barr, to conduct the kind of fact-intensive analysis of
whether a person’s religious beliefs would be or have been substantially burdened,
we must first have evidence of that person’s particular religious beliefs regarding the
complained-of governmental conduct. However, in this case, Mrs. Saghian never
testified or offered any evidence establishing either her or her husband’s personal
religious beliefs regarding autopsies.


 Specifically, Mrs. Saghian provided no
testimony that she and her husband were observant Orthodox Jews who personally
adhered to the belief of bodily resurrection and were opposed to an autopsy based on
the tenets of their faith. Instead, she presented the affidavit and live testimony of
three rabbis, none of whom established these facts critical to evaluating a claim under
TRFRA. 
           The first rabbi, Rabbi Robert Block, signed an affidavit stating that he had
received training as an Orthodox rabbi and that any delay in burial or invasive
procedure conducted after death would be contrary to Jewish law. At the hearing on
the motion to vacate or modify the order, Rabbi Robert Walker testified that any
incisions, cuts or pervasive exploration of the body after death are generally
forbidden by Orthodox Judaism and that, in his opinion, an autopsy would “cause
untold anguish, pain, both physically and emotionally, to the deceased, to his family
and to the greater community.” Rabbi Walker also described the Orthodox Jewish
belief in bodily resurrection: 
 
[W]hen the Messiah comes, there will be a re-entanglement of the body
and soul . . . [and] any type of breach or any type of incision, any type
of defilement of the physical body will constitute a lack of honor to that
person, because that person will again be revived, reunited with his
living and deceased family and that would be considered a breach of []
Biblical law. 

          Finally, Rabbi Yossi Grossman testified that he was the Dean of TORCH, an
educational organization for Jewish adults. Rabbi Grossman stated that he had
known Yahya Saghian for ten years and that Mr. Saghian had “attended many of our
events, classes.” Rabbi Grossman also testified that he and Mr. Saghian had become
“friendly” three years prior to Mr. Saghian’s death and that he had counseled Mr.
Saghian and his wife “in a pastoral setting.” Rabbi Grossman testified that he was
called to the Saghian home on the morning that Mr. Saghian’s body was found. 
          The ancillary court entered Findings of Fact and Conclusions of Law, finding
that “Yahya Saghian was, and his family are, observant Orthodox Jews.” The
evidence actually before the court, however, reveals only that Yahya and Afsaneh
Saghian consulted with Rabbi Grossman on several occasions and that Yahya
Saghian attended events and classes sponsored by a Jewish organization. None of the
rabbis testified that Afsaneh and Yahya Saghian were observant Orthodox Jews who
personally adhered to the belief of bodily resurrection and were opposed to an
autopsy on the grounds set forth by Rabbis Block and Walker.
          While we are cognizant of the broad latitude afforded to a trial court’s findings
of fact supporting a temporary injunction, that latitude only extends so far. Wright
v. Sport Supply Group, Inc., 137 S.W.3d 289, 292 (Tex. App.—Beaumont 2004, no
pet.) (“The trial court does not abuse its discretion when basing its decision on
conflicting evidence, nor does it abuse its discretion so long as some evidence of
substantive and probative character exists to support its decision.”). We must
counterbalance that generous standard of review with the Barr court’s admonishment
that the analysis under TRFRA must be particularized and fact-intensive, and the
burden must be weighed from the standpoint of the person asserting their right to the
free exercise of religion. In this case, the ancillary court’s finding that Afsaneh and
Yahya Saghian were “observant Orthodox Jews” and its implication that they
therefore personally adhered to a belief in bodily resurrection is not supported by the
necessary “substantive and probative” evidence. Id. 
          We are extremely sympathetic to the fact that Mrs. Saghian was in mourning
at the time of the hearings and that she may not have been available to provide live
testimony establishing her and her husband’s adherence to all of the religious beliefs
set forth in the various rabbis’ testimony. However, we note that her personal
appearance at the hearings would not have been the only method of establishing these
facts, and that these facts are vital if courts are to perform the particularized, intensive
analysis required by TRFRA. See, e.g., Barr, at *9, *13. TRFRA’s required
balancing of individual religious freedoms against unwarranted governmental
intrusion is too important to be done based upon conjecture and surmise about critical
facts such as these, and we are bound to refrain from doing so.   Conclusion
          We reverse the October 16, 2007 and October 17, 2007 orders of the ancillary
court, dissolve the temporary injunction, and remand this cause to the trial court for
further proceedings.
 


George C. Hanks, Jr.
Justice
 
Panel consists of Justices Jennings, Hanks, and Bland.
Justice Jennings concurring in the judgment only.